JACOB R. SHIPHERD *et al.*

*v.*

JAMES G. UNDERWOOD.

1.   AGENT—*whether he may be sued by a party who has paid him money for his principal, to recover the same back.*   Whatever may be the true rule in regard to the liability of a known agent to an action by a person who has paid money to him on account of his principal, but which has not been paid over to the latter, to recover the same back, where there are no exceptionable circumstances connected with the transaction, yet, where the money was paid to the agent on the purchase of land, under circumstances showing a case *mala fide,*—as where it was the design of the vendor to put off upon the purchaser a very defective title as and for a good one, and the latter is entitled to a return of his money, he will not be remitted to his remedy against the principal, but may sue the agent for the recovery of the money back, although he knew at the time he paid the money to the agent that the latter was acting in that capacity.

2.   EVIDENCE—*presumption—whether an agent has paid money over to his principal.*   In an action against an agent by one who has paid money to him on account of his principal, it being shown the money was paid to the agent, it will not be presumed, in the absence of proof on that subject, that the agent has paid over the money to his principal.

3.   PRESUMPTION—*as to the continuance of a given state of facts.*   Where the existence of a particular subject matter or relation has once been proved, its continuance is presumed till proof be given to the contrary, or till a different presumption be afforded by the very nature of the subject matter.

4. RESCISSION OF CONTRACTS—*placing parties in statu quo.* Where a party entered into a contract of purchase of a tract of land, and made a deposit of money with the vendor in respect thereto, the money to be refunded in case of a valid objection to the title, it is not essential to the right of the purchaser to rescind the contract and recover the money back, upon finding the title to be defective, that he should return to the vendor an abstract of the title furnished him by the latter; the abstract was no part of the subject of the sale.

5. SAME—*demand of return of money—tender.* Nor in such a case, is it necessary, in order that the purchaser may rescind the contract and recover back the money paid, that he should demand the return of the money by the vendor, or offer to pay to the latter the residue of the purchase price remaining unpaid.

6. VENDOR AND PURCHASER—*waiver by the latter of defect in title.* A party purchased a tract of land from the agent of the one claiming title thereto, and made a deposit of money thereon with the agent, the contract providing that the money was to be refunded in case of a valid objection to the title. The title was found to be defective, whereupon the purchaser abandoned the contract, and demanded the return of his money, which was refused, and at the same time he gave a written authority to the same agent from whom he had made the purchase, to sell the premises, if he could, at an advanced price. No action was had under this authority, and, eight days after it was given, the purchaser brought suit against the agent to recover back the money paid: *Held,* the giving of the authority by the purchaser to the agent to re-sell the premises, was not, under the circumstances, a waiver by the former of the defect in the title, nor an affirmance of the original contract.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

The opinion states the case.

Mr. EDWARD S. BRAGG, for the appellants.

Mr. WILLIAM R. PAGE and Mr. HUNTINGTON W. JACKSON, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action for money had and received, brought by Underwood against Shipherd & Sweet, to recover a payment or

deposit made by him on a contract for the purchase of real estate in Cook county.  The cause was tried by the court without the intervention of a jury, and judgment rendered against the defendants for $1200 and costs.

On the trial the plaintiff testified, that sometime in February, 1869, he contracted with the defendants to buy certain lands, and paid them thereon $1200 ; that the contract was written ; the purchase price of the land $48,000 ; terms, $16,000 to be paid in twenty days from date, balance in one and two years ; warranty deed to be given if first payment is made as above, remainder to be secured by trust deed and notes ; failure or refusal to make the first payment within the time above stated to render the contract null and void ; money paid to be refunded in case of valid objection to the title, otherwise to be retained as liquidated damages, if the first payment is not made ; time declared to be of the essence of the agreement ; $600 acknowledged as received on said first payment ; $600 more to be paid on or before the twenty-fifth instant ; dated, Chicago, twenty-second day of February, A. D. 1869.

[Signed,]                    W. H. HOYT.

By SHIPHERD, SWEET & Co. Agents.

That there was a delay in procuring an abstract to be furnished ; that he received from the defendants an abstract then produced and identified by him, which they gave him for examination ; that he did not receive it until eighteen or nineteen days after the date of the contract ; that as soon as he received it he took it to Mr. Lyman, for a legal opinion, which was prepared in a few days after, and he then had Mr. Lyman go and see the defendants ; that after this, he went himself, and saw the defendant, Sweet, and offered to perform, but he did not attempt to remove any of the objections, nor offer to give him a deed.

On cross examination, he said he had not tendered any money at any time ; he told defendant he had the money ; defendant Sweet told him to go to Mr. Hoyt, who was to make

the deed, and tender him the money and put him in default; that Hoyt lived at Chicago, but he did not go to him; that he had the money in his pocket and at the bank; could not tell how much he had in his pocket, or how much in bank, but knew that the sums were enough to make the amount required; Sweet said nothing about giving a deed, but told him to go to Hoyt and make him a tender if he had the money; he demanded of them the money he had paid, which was refused. This was somewhere about the twentieth to the twenty-fifth of March, 1869.

Mr. Lyman, an attorney at law, testified that he received an abstract from plaintiff nineteen days after the date of the contract; he examined it, and some seven or eight days after, gave plaintiff an opinion in writing, and went himself to see defendants, to call attention to defects, and ask explanation; they gave none. The abstract was offered in evidence, from which it appeared, that, at the date of the contract and giving the abstract to plaintiff, there were mortgages upon the property to the amount of $21,000, and a judgment for the sum of $6033,-49, which were liens thereon, and taxes unpaid for the year 1867, for which the property had been sold, from which it had not been redeemed, and that the title to the premises was in Tewksbury, and Hoyt had only a contract therefor.

Benjamin J. Sweet, one of the defendants, testified: we were the agents of W. H. Hoyt at the time we executed the contract, and had full authority from Hoyt to make the same; the plaintiff never tendered the money provided for the first payment, nor any part thereof; some time about twentieth of March, plaintiff came in, with his lawyer, and objected to the title, and said he was ready to pay; I told him if he had the money to go and tender it to Mr. Hoyt, and if he could not make the title good, he would be entitled to recover his money back, and we would be entitled to our per centage; that our business with Hoyt closed with this one single transaction, which was isolated; we did no other business for him. After the plaintiff had made his objection to the

title, and after I had told him to go to Mr. Hoyt, he gave us a paper, signed by him, as follows:

"CHICAGO, March 25, 1869.

"Shipherd, Sweet & Co. at 155 and 157 LaSalle Street, Chicago, are hereby authorized to sell for me, blocks 17, 18, 19, 20, 21, 22, 23 and 24, in Maher's subdivision, section 15, town 38, range 14, 3 P. M., being forty acres, more or less, in Cook county, Illinois, upon terms as follows: Any sum from $1300 to $1500 per acre, $20,000 down, balance at one and two years, seven per cent interest; subject to two and one-half per cent commission to them.

J. G. UNDERWOOD, Owner."

This is the same property as described in the contract. Which was substantially all the evidence in the case.

Upon this state of facts it is contended:

1.   That no liability attached to the agents, but the remedy, if any, exists against the principal.

We find a want of entire harmony among the authorities, upon the point, under what circumstances, money, in the hands of an agent, to which another person than the principal is entitled, may be recovered from the agent at the suit of such person. Story lays down the rule, without qualification, that if a party who has paid money to an agent for the use of his principal, becomes entitled to recall it, he may, upon notice to the agent, recall it, provided the agent has not paid it over to his principal, and also provided no change has taken place in the situation of the agent since the payment to him, before such notice. Story on Agency, sec. 300.

The cases cited by appellee's counsel, of *Buller* v. *Harrison*, 2 Cowp. 566, *Cox* v. *Prentice*, 3 M. &. S. 348, and *Hearsey* v. *Pruyn*, 7 Johns. R. 181, were cases where the principal had no right to receive the money, as in the first case, or where it was paid by mistake, as in the last two. In all such cases, it appears to be settled, that the action lies against the agent,

480 .    SHIPHERD *et al. v.* UNDERWOOD.    [Sept. T.,

Opinion of the Court.

where he has not paid over the money, or in some way altered his situation in relation to his principal.

But where the money is properly paid to the agent, according to many authorities, the agent's liability is to his principal, alone.

The cases cited by appellants' counsel, are those of *Greenway* v. *Hind,* 4 T. R. 553; *Bamford* v. *Shuttleworth,* 11 Adolph. & Ellis, 926; *Stephens* v. *Babcock,* 23 E. C. L. 160. The first was an action against a revenue officer, for money erroneously paid by way of duty, and the action held, by Lord KENYON, not to lie, on the ground that it would not lie against a known agent; yet, in *Elliot* v. *Swartwout,* 10 Peters R. 137, an action was sustained against a collector for an excess of duties paid to him. In the case of *Bamford* v. *Shuttleworth,* the agent gave a written receipt for the deposit money on a sale, in the name of his principal, and the sale falling through on account of a defect in the vendor's title, the action was held not to lie against the agent by the vendee, for the money paid. The money had been paid over in this case, but the decision was not put upon that ground, one of the judges remarking that it was immaterial whether it had been paid over or not, the others putting it on the ground that there was no privity of contract, between the vendee and the agent. *Stephens* v. *Babcock* was an action against an attorney's clerk, for money collected and receipted for in the name of the attorney, and the action by the client against the clerk held not to lie.

In *Sadler* v. *Evans,* 4 Burr. 1984, the action was held not to lie against a receiver of rent, where the avowed intention was to try the right of his principal to a quit rent. In that case Lord MANSFIELD said he kept clear of all payments to third persons, but where it is to a known agent; in which case, the action ought to be brought against the principal, unless in special cases, as under notice, or *mala fide.*

In *Colvin* v. *Holbrook,* 2 Comst. 126, the conclusion seems to have been arrived at, that an agent receiving money for his principal, in pursuance of a valid authority, without fraud,

duress or mistake, is not liable to an action in behalf of a person who is ultimately entitled to the money, for neglecting to pay the same upon request, and before it is paid over to the principal.

In *Costigan* v. *Newland,* 12 Barb. 456, the same principle is recognized, and it is said the above case of *Colvin* v. *Holbrook,* must be regarded as settling the law in that State.

It is laid down in 1 Parsons on Contracts, 79, to be a rule of law in respect to all agencies, that where money is paid to one as agent, to which another, as principal, has color of right, the right of the principal cannot be tried in an action brought by the party paying the money, against the agent, as for money had and received to the use of such party, but such action should be brought against the principal.

Without undertaking to say what might have been our conclusion, had this money been paid and received under different and unexceptionable circumstances, we must hold, that under the special circumstances of this case, the action was well brought against these agents.

Underwood contracted for a good title ; he was to have a warranty deed ; the idea was held out to him that he was paying this deposit money for a good title, and if he found any valid objection to the title, (evidently on examination of the abstract to be furnished to him,) the money was to be refunded to him.    If Hoyt had had no title whatever to this land, and he or his agents had known it at the time of this contract, it would have been a case of palpable fraud.

The exhibit of title furnished by the abstract in this case, is but a small remove above no title.    We must consider that Hoyt knew of the condition of his title, nothing appearing to the contrary, and especially, as not a word of explanation has been given in regard to it, either on the trial of the cause, or when Underwood applied to have the objections to the title removed, or when his attorney called upon these agents expressly for such explanation.

The attempt to put off upon a purchaser such a claim to land as and for a good title, seems an imposition; and we regard the obtaining of this deposit money, under such circumstances, and before the furnishing of the abstract whereby the defects in the title could be detected, as not in accordance with fair dealing, and that Lord MANSFIELD's excepted special case of *mala fide* is here presented, where an action might lie against a known agent.

2. The second point made by the appellants' counsel, from which he seems to think there can be no escape, is, that in case it be held that the action lies against these agents, there is no proof that the money still remains in their hands.

It is said there is no proof concerning the money, except payment to the defendants; that there are no presumptions to help the case, for all the presumptions would be in favor of the agents having paid it to their principal, as in duty bound.

Had the omission of the agents to pay over the money to their principal been a criminal offence, there might have been a presumption in favor of innocence, that they had paid it over. Not paying over the money was only a breach of an implied contract, and we are not aware of any presumption of the performance of a contract. The money was proved to be in the hands of the agents, and where the existence of a particular subject matter or relation has once been proved, its continuance is presumed till proof be given to the contrary, or till a different presumption be afforded by the very nature of the subject matter.

Important presumptions are derivable from the conduct of parties. Where a party has the means in his power of rebutting or explaining the evidence adduced against him, if it does not tend to the truth, omission to do so furnishes a forcible inference against him. 2 Stark. Ev. 934.

Payment over of this money without notice would have been an undoubted defense, and if such had been the fact, it would seem natural that defendant Sweet, when testifying on the trial, would have given the court information of it, and his omission

to do so the court might have thought furnished an inference against him, that the money had not been paid over. We are satisfied with the finding of the court that this money had not been paid over, and was still in the agents' hands, where it was last seen.

3. It is next contended, the case shows no liability on the part of either principal or agent, because there was no rescission of the contract, and restoration of the parties to their original position; no return of the abstract, and no tender of the money, so as to place the principal in default.

The abstract was no part of the subject of the sale. It was only the evidence which the agents furnished Underwood of the title to the land, and the return of it was not necessary to enable him to rescind the contract, or enforce his claim for this money. $16,000 were to have been paid in twenty days; not until the nineteenth day did the defendants furnish the abstract to Underwood. He immediately placed it in the hands of an attorney, for a legal opinion as to the title. It seems to have taken the attorney seven days to prepare his written opinion. Underwood immediately went to the defendants, ready and willing to perform, and offered to do so if the title could be made good. The law did not require him to tender any money for the defective title that was exhibited to him. *Smith* v. *Lamb*, 26 Ill. 396.

It is said the agency of the appellants expired with the original transaction, but it seems they furnished the abstract to Underwood on the nineteenth day thereafter. When the abstract was examined, and it was found there were valid objections to the title, the contingency happened, upon which Underwood became entitled to a return of his money. He was not required to go in pursuit of Hoyt, and make any tender or offer to him, or to demand the money of him.

4. Lastly, it is insisted that the paper writing of the twenty-fifth March, 1867, was an affirmance of the original contract, and a waiver of the objections to Hoyt's title.

It is to be noted that this was given at the time Underwood abandoned the contract for defects in the title, and demanded back the money he had paid, and the refunding of it was refused.

During this interview, not unlikely, these agents held out to Underwood the prospect that they could re-sell the property at a large advance, and, under the circumstances, we can attach no greater significance to this writing than as expressive of a willingness on the part of Underwood that these agents might have the opportunity to try to re-sell the land at a profit.

The lowest terms named would have been an advance of $4000. Underwood might have had a lingering hope that Hoyt would yet perfect the title. No action was had under the writing. If Underwood himself ever entertained the idea that the land could be re-sold at a profit, it seems to have been speedily dissipated, as this action, in renunciation of the contract, was commenced only eight days afterwards.

It would be a too rigorous construction of the mere making of this paper writing, to hold it to be a waiver of the objections to this title,—an election on the part of Underwood to take it as it was, and that he was bound to go on and pay out his money for such a feeble claim to land. We can give to it no such concluding effect.

The judgment of the court below is affirmed.

*Judgment affirmed.*