' LINDSBORG MILLING & ELEVATOR COMPANY, Appellant and Respondent, v. DOMINO DANZERO, Respondent and Appellant.

Springfield Court of Appeals, March 20, 1915.

1. SALES: Particular Brand of Goods: What Fulfills Contract. A seller of goods, under a contract to furnish a particular brand, fulfills such contract by furnishing such brand, irrespective of its merits when compared with other brands of the same type of goods. The buyer can demand only that the thing bought comes up to the standard of its class.

2. ———: ———: Particular Purpose: Implied Warranty. Where facts and circumstances disclose that a seller contracts to sup-

ply a certain thing for a certain purpose, the buyer trusting to the judgment of the seller, an implied warranty arises that it shall be reasonably fit for that purpose.

3. ———: ———: **Flour of Particular Brand: Contract Fulfilled When.** Where the vendor contracted to sell a certain quantity of "Golden Eagle" Flour to defendant, he performed his contract by delivering flour of that brand, regardless of whether it was suitable for making the kind of bread which defendant baker produced or was adapted to his method of baking.

4. **APPEAL AND ERROR: Damages Not Determined: Reversal: Judgment Not Directed.** Action for breach of contract to purchase certain flour. Where the question of damages had not been determined by the trial court the appellate court cannot, in reversing, direct entry of judgment for plaintiff.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED (*in part*) AND REVERSED AND REMANDED (*in part.*)

*Sebree & Orr* for appellant.

(1) The contract being in writing and definite in its terms and calling for "Golden Eagle," a well known brand of flour manufactured by plaintiff, there was no implied warranty that the flour was suitable for the defendant's purpose, and plaintiff complied with the contract by sending "Golden Eagle" flour. Mechem on Sales, sec. 1349; Benjamin on Sales, sec. 657; Parsons on Contracts, sec. 589; 35 Cyc., secs. 400-4; Jones v. Just, L. R., 3 Q. B. 197, Leading case; Marks v. Williams Cooperage Co., 103 S. W. 20; Fairbanks, Morse & Co. v. Baskett, 71 S. W. 1118; Seitz v. Refrigerating Machine Co., 141 U. S. 510; Grand Avenue Hotel v. Wharton, 79 Fed. 43; Beggs v. Hanley Brewing Co., 62 Atl. 373; Dounce v. Dow 64 N. Y. 411; Healey v. Brandon, 21 N. Y. S. 390; Warren Glass Wks. Co. v. Keystone Coal Co., 5 Atl. 253; Fraley v. Bispham, 10 Pa. St. 320; Ivans v. Lowry, 50 Atl. 355; Milwaukee

Boiler Co. v. Duncan, 87 Wis. 120. (2) Under the pleadings and the undisputed testimony the finding of the court should have been for the appellant. See authorities under 1. (3) Under the facts found by the court the judgment should be for the plaintiff on its cause of action and against the defendant's counterclaim. See authorities, under 1.

*Wright Bros.* for respondent.

(1) The plaintiff breached the contract by shipping flour inferior in quality to that provided in the contract, and having so breached, the defendant was under no obligation to accept any flour thereafter shipped. Ungerer & Co. v. Cheese & Fish Co., 155 Mo. App. 95, 107; Norris v. Letchworth, 167 Mo. App. 553, 557; Felix v. Bevington, 52 Mo. App. 403; Crews v. Garneau, 14 Mo. App. 505; Webb v. Steiner, 113 Mo. App. 482; Davis v. Barada, 115 Mo. App. 327. (2) The defendant was excused from further performance on his part because of plaintiff's prior breach. Ungerer & Co. v. Cheese & Fish Co., 155 Mo. App. 95, 107; Morrison v. Leiser, 73 Mo. App. 95; Tiedeman on Sales, sec. 209. (3) Defendant did not breach his contract; the contract was breached by plaintiff by the shipment of inferior flour prior to the time defendant gave notice that he would receive no further shipment. Ungerer & Co. v. Cheese & Fish Co., 155 Mo. App. 95, 107. (4) Plaintiff must show substantial performance on his part. Morrison v. Leiser, 73 Mo. App. 95, 98; Norris v. Letchworth, 167 Mo. App. 557.

ROBERTSON, P. J.—Plaintiff instituted this action to recover damages on account of defendant's alleged failure to comply with a contract to purchase flour. The defendant answered alleging plaintiff's failure to comply with the contract and asked damages by way of a counterclaim. A trial, without a jury, re-

sulted in a finding of facts upon which a judgment was entered denying each of the parties any relief sought under their respective pleadings, and both parties have appealed.

The parties entered into a written contract at Springfield, this State, under date of August 12, 1912, stating that the plaintiff, of Lindsborg, Kansas, sold and the Domino Bakery, the name under which defendant was doing busines as a baker, of Springfield bought 2015 barrels of Golden Eagle brand of flour at a price therein designated and to be shipped in installments as therein provided. The only point made here for our consideration is as to the sufficiency of the finding of facts to support the judgment. The contract stands admitted. Two shipments of two cars each were made to defendant.

The trial court found ''That the first two named shipments of said flour met the requirements as to quality of the contract, and the last two named shipments, shipments of November first and December first, were *deficient in quality;* the first flour contained in said shipments was not reasonably fit *for the purpose for which it was designated,* to-wit, to bake bread of.''

Then follows a recital as to the complaint of the defendant to the plaintiff about the character of the two last shipments and the court proceeds:

''The court finds also that this flour was tried by the defendant in his bakery, according to the tests and trials which he gave it as established by two of his former employees, *the flour failed to meet his requirements as to quality on the contract expressed and implied.* The court finds these *last two cars of flour were deficient,* and on account thereof, the defendant refused to accept any more flour under the contract, and advised the plaintiff of said refusal and cancelling of said contract.''

After reciting what the parties did concerning the last cars after defendant refused to accept them the findings of facts conclude as follows:

*"The court finds this flour of these last two shipments which defendant refused to receive was Golden Eagle Flour, that is, the flour called for by the contract.*

"The court finds against the defendant on his counterclaim for the reason there is not sufficient evidence of his damage to warrant the court in rendering judgment for him."

We have italicized certain portions of the above quotations so that the material parts thereof may be readily observed.

Preliminary to the consideration of the main point involved we shall dispose of the suggestion of the defendant that the testimony discloses that the term "Golden Eagle" flour has no distinctive individual significance but that it was nothing more than a name placed upon the receptacle for the flour and signified no particular grade. The defendant is clearly mistaken as the testimony discloses that it did designate a particular brand and grade distinct from the other brands handled by the plaintiff, "due to the difference in the milling of it." Defendant's confusion arises from the fact that one of plaintiff's witnesses upon this question stated that any kind of flour *could* be put in "White Duck Sack or Golden Eagle Sack," if it were desired, but he did make it clear that Golden Eagle flour, commercially possessed a peculiar quality of its own, and had "been on the market for years."

There is nothing in the testimony nor in the finding of facts that discloses that the defendant trusted to the judgment of the plaintiff to do anything further than to furnish him (defendant) this particular brand of flour; neither is there anything to disclose that the defendant informed the plaintiff that he was seeking to

make any particular kind of bread or pastry as the result of this contract.

Considering the finding of facts most favorable to the plaintiff we have these points:

(1) That the last two shipments were not reasonably fit for the purpose for which they were *designated,* "to-wit, to bake bread."

(2) That this flour was tested by defendant and failed to meet his requirements as to quality on the contract expressed and implied and was deficient.

(3) These last two shipments were Golden Eagle flour called for by the contract.

It will thus be noticed that (1) and (3) of the finding are apparently inconsistent. The one designated as (2) may be eliminated as having no bearing on the case because it simply finds that the flour failed to meet defendant's requirements, which should be no criterion from which to determine if he complied with the contract, and the assertion in (1) that it was deficient is so general and indefinite as not to justify us in concluding that the two shipments did not come up to the standard of this brand, as we can as well conclude therefrom that this term was used by the trial courts as a conclusion resulting from a comparison of this particular brand with flour and other brands in general. It must be held that what is said in (1) as to the shipments containing flour not reasonably fit for the purpose for which it was intended applies, as is also shown by what is said in (2), to defendant's contention exclusively, otherwise (3) would be meaningless, unless we say that Golden Eagle flour would not make bread, which would be contrary to all of the testimony and the finding that the first two shipments met the requirements of the contract, and hence was such flour. We think that the decision of this case must rest upon the finding which we have designated as (3), not only because it is evidently the final summing up by the court of the facts which were deemed material,.

but it is the only one that is unambiguous and evidently intended to make clear this one point that may have otherwise been somewhat beclouded by the previous statements.  What the court undoubtedly intended to do was to base the judgment on the fact that the plaintiff in furnishing this brand did not furnish flour that was reasonably fit for the purposes for which defendant ordered it, and that is recognized in the manner in which the case is presented and argued here by both sides.

The parties in presenting the case here have raised no technical question upon the sufficiency of the finding of facts, but have in a clear-cut manner submitted the issues of law raised by the testimony which we shall consider with reference to the finding of facts and such uncontradicted testimony as will not lead us to invade the province of the trial court as the trier of the facts, and thereby reach a conclusion as to the law that should govern in the determination of the rights of the respective parties under this contract.

That the term Golden Eagle flour, as used in the contract, in and of itself distinguishes it from the term flour in general, that is, it has an individuality commercially and has had for years, as the testimony, uncontradicted and unobjected to, discloses; and in the absence of testimony to the contrary, we assume that the parties so considered it and entered into the contract accordingly.

We then have a case in which the defendant contracted to buy a particular manufactured article, somewhat similar to a case where a person buys a plow, engine, typewriter, wagon, automobile, or machine of any particular manufacture.  In those instances he gets what he contracted for when he gets the article coming within the designated manufactured class although it may not compare favorably with all articles coming generically within the term of plows, engines, typewriters, wagons or automobiles.  The article thus

purchased may not perform sufficient of the functions of a plow, typewriter, etc., to entitle it to take that term, although it has the required form, in which instance it would not meet the requirements of the contract, but if it did perform these functions to the fair and reasonable extent of those within its particular class or species, then it could not be said to be defective or deficient within the meaning of the contract, although it might not meet the requirements which the purchaser anticipated when he purchased it.

Although the seller knows, and the purchaser states, that the article is required for a particular purpose, yet when there is nothing more in the contract than that the buyer is contracting for this definite, known and described thing there is no implied warranty that it shall answer the particular purpose intended by the buyer. The buyer can demand only, under such circumstances, that the thing bought comes up to the standard of its class. This is the rule announced in the leading case on this subject in Sitz v. Brewer's Refrigeratoring Machine Co., 141 U. S. 510, 35 L. Ed. 837, and recognized by the Supreme Court of this State in Mark v. H. D. Williams Cooperage Co., 204 Mo. 242, 264, 103 S. W. 20.

If the facts and circumstances disclose that the seller contracts to supply the thing for a particular purpose, the buyer trusting to the judgment of the seller, then the implied warranty arises that it shall be reasonably fit for that purpose, as for instance, if the party who purchases a plow, typewriter, wagon or automobile contract with reference thereto for the accomplishment of a particular or given result without reference to the particular manufacturer or make, then it would be clear that the result and not the class is the thing for which the contract is made—the buyer has lost sight of the particular make of the article. In one instance the buyer has concluded in his own mind which

is the most desirable class of article and in the other he has decided upon the results to be obtained and left it to the seller to furnish the means, as in Skinner v. Kerwin Ornamental Glass Co., 103 Mo. App. 650, 77 S. W. 1011.

The defendant cites and relies on Ungerer & Co. v. Louis Maull Cheese and Fish Co., 155 Mo. App. 95, 134 S. W. 56. The law there announced is against him. In that case the buyer contracted for "gum tragacanth powdered" (p. 99) which the testimony showed to be a distinctive description "of a particular article, according to a known mercantile classification." (p. 105.) It was held that the buyer was entitled to the thing bought and not a substitute. It logically follows that he could not, any more than defendant in this case, demand something he did not buy. He was entitled to the thing that belonged to the classification in his contract and nothing more.

Applying the law to the facts in the case at bar it is clear from the testimony that the parties fixed the kind and quality of flour to be delivered, by the use of the term "Golden Eagle." Under the contract plaintiff was required to deliver flour of the quality for which that term stood. If the flour which plaintiff shipped came up to that standard he is entitled to recover even though such flour may not have been suitable for making the kind of bread which defendant used and was not adapted to his method of making bread. The plaintiff did not claim for this brand of flour that it was of the highest quality manufactured by it. This brand of flour the testimony tends to prove, was known to the trade generally and that the defendant previously used it. If this is true he knew what this particular brand stood for. If he did he has no right to claim that he bought and must have the highest quality of flour. The defendant cannot, however, be required to accept a grade of flour that did not reasonably measure up to the standard of the brand of

flour which is designated as Golden Eagle. The fact that the last two cars shipped were of a different quality and claimed to be much inferior to the first shipments, while evidence tending to prove that the last cars did not contain Golden Eagle flour, but an inferior grade, was evidently not taken as true by the court, since the finding of facts recite that the last shipments contained Golden Eagle flour. This finding could not have been made except on the theory that the testimony as to the inferiority of the last shipments was not believed or the trial court lost sight of the quality necessarily implied by the term Golden Eagle and assumed that because it was so labeled it should be so accepted, but if this was the theory on which this statement in finding of facts is based then the trial court was in error. Putting some other grade of flour in sacks labeled Golden Eagle would not make it that brand of flour within the meaning of the contract.

From what has been said it is apparent that if the term Golden Eagle flour had no recognized meaning as to a distinctive grade of flour but was a mere term used by plaintiff in marking his flour sacks then it is evident from what has been said that there would be an implied warranty that the flour sold was reasonably suitable for the purposes and uses intended by the defendant because all classification and selection of any particular class is wholly eliminated.

The trial court, having concluded to enter judgment for defendant on plaintiff's claim naturally did not lay any basis in the finding of facts for a judgment in plaintiff's behalf and since the testimony is conflicting on the market value of flour at Springfield, we cannot direct a judgment for plaintiff by the trial court. The defendant testified only as to what he paid for flour, but as that was not objected to in any manner by plaintiff and it appears that it is willing to accept such testimony as of some probative force we shall not ignore it.

The judgment on defendant's counterclaim is affirmed, and reversed and the cause remanded as to the judgment in defendant's favor on plaintiff's cause of action.

*Farrington* and *Sturgis, JJ.,* concur.