## AMERICAN NAT. BANK OF NASHVILLE v. WEST.
### —212 S. W. (2d) 683, 4 ALR 2d 314.

Middle Section.   May 1, 1948.

Petition for Certiorari denied by Supreme Court, July 17, 1948.

William C. Bowen and Bass, Berry & Sims, all of Nashville, for administrator.

Richard S. West and Noah W. Cooper, both of Nashville, and Alvin O. West, of Arlington, Va., for appellant.

FELTS, J.  The American National Bank, administrator of Mrs. Vera L. Cryer, deceased, sold her personal effects at auction.  At this sale Mrs. Karen M. West bought among other things a box of deceased's old clothes for $9.50.  She later found in a pocket of a bathrobe in this box two of deceased's rings—a cameo of small value and a diamond of the value of $2,500.

The relatives and the administrator had made careful but unsuccessful searches for these rings; and no one knew, or had cause to suspect, that deceased had left them in the bathrobe pocket.  On learning of their discovery the administrator demanded them as property of the

estate. Mrs. West refused to surrender them. The administrator filed a bill of replevin to recover them. In her answer Mrs. West claimed they had passed to her under the sale as part of the contents of the box of clothes.

The cause was heard before the Chancellor and a jury, defendant having demanded a jury. Several issues were tentatively submitted at the beginning of the trial, but at its conclusion the Chancellor submitted to the jury only one issue: "Was it or not the intention of the parties and one of the terms of sale of the box to Mrs. West, which box contained the rings in question, that the purchaser got title to all its contents, including said rings?"

The jury were unable to agree and complainant moved the Chancellor to withdraw the issue and to enter a decree for complainant because the evidence raised no question of fact or issue for the jury. The Chancellor granted this motion, held there was no evidence of any intention of the parties the one to sell and the other to buy these rings, and entered a decree awarding recovery of them to complainant.

Mrs. West appealed, saved a bill of exceptions, and has assigned ten errors. All but one of them relate to her main insistence that the rings passed to her by the sale or at least that the evidence made the intention of the parties a question for the jury. That one presents her insistence that complainant by its conduct ratified the sale of the rings to her.

Besides the direct evidence as to the intention of the parties, there was a rather large amount of testimony as to the collateral circumstances. Mrs. Cryer was an elderly lady, had lived alone in a large house, and had

accumulated a large amount of household goods and personal effects. When the administrator took charge its employees and her kin went through all of her belongings. Knowing she had these two rings, they looked for them wherever it seemed likely they might be found. While they did not find these rings, they did find some $4,000 in money in various places about the house.

After her house had been twice broken into the administrator, pursuant to an order of the county court, had all her belongings moved to a storage warehouse for safekeeping until the sale. The administrator employed an auctioneer and rented a vacant uptown storehouse in which to conduct the sale. All the property was brought to this house and was sorted and arranged by the auctioneer and his employees. All articles of any substantial value were set apart, with numbers pasted on them to be sold separately. Some of the things such as old clothes, etc., of only nominal value were put in boxes, things of like nature being put in each box, and each box given a number.

In conducting the sale the auctioneer offered each article or box separately, and when it was sold his clerk made a record of the number, the price, a brief description of the thing sold, and the name of the purchaser. The auction lasted three days, and Mrs. West attended and made a number of different purchases. She saw this box of clothing the day before it was offered for sale. It was a pasteboard box containing items of deceased's personal clothing and nothing else except the rings which, unknown to everyone, had been secreted by deceased in the bathrobe pocket. The top of this box was open and a dress or coat was exposed to view. While Mrs. West said she did not look into this box, she did state that

prospective bidders looked into the boxes that were open "if they wanted to."

If these rings could have been found before the sale, the auctioneer would have sold them separately as he did other items of jewelry of deceased. When this box of clothing was offered for sale, the auctioneer held it up before the crowd and said: "Here is a box of clothes. What am I offered for it?" When it was knocked off to Mrs. West for $9.50, the clerk made a duplicate memorandum of the sale, keeping one copy and giving her the other. It stated the number, the price, and described the thing sold as "box clothing." Mrs. West said she understood it was a box of clothing that she was buying, and she testified "I bought the box and contents, which was clothing."

■ Thus the evidence shows without dispute that what the seller intended to sell, and what the buyer intended to buy, was this box of deceased's clothing. It was their mutual intention that whatever answered to that description should pass to her by the sale; and the evidence affirmatively shows that neither party had any idea that these valuable rings might be secreted in this box of clothes, or any intention that they should pass by the sale. As to them there was no contract, no meeting of the minds, no sale.

■■ A sale must rest on mutual assent of the parties as to all its terms, including the identity of the thing sold. Where there is no consensus ad idem there can be no sale. So it is generally held that valuables secreted by a decedent in articles of pesonal property do not pass by the personal representative's sale of such articles, but upon discovery are held by the purchaser as the property of the decedent's estate. Huthmacher v. Har-

ris, 38 Pa. 491, 80 Am. Dec. 502; Evans v. Barnett, 6 Pennewill, Del., 44, 63 A. 770; Bowen v. Sullivan, 62 Ind. 281, 30 Am. Rep. 172; Durfee v. Jones, 11 R. I. 588, 23 Am. Rep. 528; Livermore v. White, 74 Me. 452, 43 Am. Rep. 600; 46 Am. Jur., Sales, sec. 147, p. 325; Benjamin on Sales, 6th Ed., 78; 1 Mechem on Sales, sec. 273, p. 256.

To take the case out of this general rule, appellant relies on what she testified the auctioneer announced as the terms on which the sales would be made. We take her testimony as true, though much of it was contradicted by that of the auctioneer. She said that she did not recall that he made any announcement with reference to this particular box of clothes, but that at the beginning of the auction and from time to time during the three days it lasted, he did announce the terms which would govern all the sales that were made.

She testified that he announced that "everything was to be sold and what you bought, there was no comeback on that, you were guaranteed nothing, of the contents or anything, except the title, after you buy it, it is yours"; that "it was an understood fact, that you would buy whatever was there and the title was yours; anything was yours, whatever you bought belonged to you"; that "whatever you bought in the box (referring to no box in particular but generally to all of them) it was yours, regardless of what was in there. If there was any boxes that could not be examined or the top taken off and looked into, you bought it as is, the boxes that were open, they (bidders) looked into them if they wanted to."

Giving this testimony its utmost effect, we think it did not constitute any evidence that the parties understood, contemplated, or intended that these rings of the value

of $2,500 should pass by the sale of this box of comparatively valueless old clothes, which sold for $9.50. These terms of sale did not apply at all until a sale had actually been made. They did not impose on the parties a contract they never intended to make; they were merely to strengthen the contract which the parties did intend to make; not to entrap them into one which they had no idea of making.

Appellant relies on Crespin v. Puncheon, 7 V. L. R. 203 (Australia, 1881). We do not have access to this report but learned counsel has kindly furnished a photostat of its pages. That was an auction sale of salvage from a shipwreck. Plaintiff purchased four bales which the catalogue described as "newspaper." But with this description the catalogue also stated "If any error is made in describing the quality of any of the lots it shall not vitiate the sale but the purchaser shall be bound to take the article sold with all its faults as it lies here, packages full or empty, contents not known or guaranteed." It turned out that these four bales contained not newspaper but calico, which was much more valuable. The seller refused to deliver the bales and the buyer sued for damages for nondelivery. The court held that the effect of the above quoted condition was that the parties contracted to sell and buy a "chance" and to run the risk of whatever might be the contents of the packages.

Clearly that case is no precedent for a decision of this case, since the facts are wholly different. There the parties were uncertain of the contents and specially contracted to cover such uncertainty or risk. Here there was no uncertainty in the minds of the parties as to the contents of this box of clothes. The auctioneer had

put the clothes in the box, left it open for inspection, and stated it contained clothes. Appellant understood this. But that these valuable rings were hidden in the bathrobe pocket was a thing of which neither party had any idea and a thing about which both were mistaken. This mistake prevented any meeting of the minds and any contract or sale of the rings.

These observations are equally applicable and serve to distinguish the other two cases cited for appellant: Dawson v. Muir, 7 Scott's Revised Reports 446 (to which we do not have access but photostats of which have been furnished) and Howkins v. Jackson, 47 Eng. Rep. 1697, also 42 Eng. Rep. 144. Without going into detail, it is enough to say that on the special facts of these cases it appeared the parties contracted to cover the very contingency that happened, which they did not do in the present case.

■ We find no evidence that the administrator ratified any sale of the rings to appellant. As stated, she made several purchases besides that of the box of clothing. She did this with the understanding that she might not have enough in the bank to cover all her checks and that after the auction her husband would give one check to the bank to take up all of hers. Mr. West went to the bank, saw the clerk, and gave his check in exchange for those of Mrs. West, at the same time telling the clerk of the discovery of the rings. This was on a Friday and the next day was a holiday. Immediately after Mr. West left, the clerk notified the trust officer, who got in touch with Mr. Bowen, attorney for the administrator. On Monday, the first business day after the discovery, the trust officer went to the office of Mr. West and requested him to have the rings appraised so that the administra-

tor could learn their probable value and decide upon its course of action. On that day Mr. West's check was paid and he later reported the appraisal.

The evidence shows without dispute that the clerk to whom Mr. West delivered his check in exchange for Mrs. West's checks, and whom he informed of the discovery, had no authority, discretion, or power to bind the bank. In these circumstances we find nothing to support any claim of ratification.

All of the assignments of error are overruled. The decree of the Chancellor is in all things affirmed. The costs of the appeal are adjudged against appellant and the surety on her appeal bond.

Howell and Hickerson, JJ., concur.