P. H. MOORE et ux., v. THOMAS H. BERRY et ux.
—288 S. W. (2d) 465.

Eastern Section.   April 19, 1955.

Petition for Certiorari denied by Supreme Court, August 2, 1955.

Chas. H. Davis, Knoxville, for appellants.

Hodges & Doughty, Knoxville, for appellees.

HOWARD, J.   Referring to the parties as they originally appeared below, this suit for specific performance was filed by the complainants, Mr. and Mrs. P. H. Moore, against the defendants, Thomas H. Berry and Wife, Ellen McClung Berry, all parties being residents of Knox County, Tennessee.

The record discloses that Mrs. Berry on June 26, 1953, entered into a written contract listing with the Rader Land & Auction Company, a Knoxville concern, to sell at public auction 81 acres of land owned by her in Fountain City, in the 7th Civil District of Knox County.   This property was formerly owned by Mrs. Berry's father, Judge Hugh L. McClung, a highly respected citizen of Knox County.   The listing contract signed by Mrs. Berry

with the Auction Company contained among other conditions the following provisions:

"* * * sale to be made for not less than ½ cash payment, with balance payable in not exceeding 1 and 2, 3 years; deferred payments to be secured by lien on property, and, in the event of a sale, hereunder, said owner agrees to execute proper deed in consummation of such sale, and to make deed on day of sale. And in the event this sale is not confirmed, the party of the first part agrees to pay the party of the second part all expense of sale, except those incident to actual auction sale on day made",

Previous to the auction the land was subdivided into 47 lots, the property involved herein being the "Residence" or "Mansion" lot known as "Belcaro," containing 3.96 acres.

For several weeks prior to the auction which was held on August 1, 1953, at 10 a. m., the sale of the property was widely advertised, and just before the auction started the auctioneer read the written terms and conditions, consisting of 9 items, under which the auction would be held, three of the items affecting the property in question and reading as follows:

"2. Home to be sold one-third cash and balance in equal installments of one, two, three, four and five years, with six percent interest.

"6. Deposit of not less than ten percent must be made to bookkeeper when bid is accepted, and the remainder of the down payment must be made in ten days.

"9. We reserve the right to group any two or more lots or tracts any way we see fit to get the own-

ers the most money. All this property is sold subject to the owners confirmation.''

After the above terms and conditions were announced, the first property put up to be auctioned was the property in question, and after several bids the auctioneer announced that the property had been sold to complainant P. H. Moore, who was the highest bidder, for $30,500. Immediately thereafter Mr. Moore signed an agreement to purchase prepared by the auctioneer's agent and gave said agent Mrs. Moore's check for $3,000, payable to Mrs. Thomas Berry, as a down payment. The agreement to purchased signed by Mr. Moore was on a printed card, the blank spaces of which were filled in with pen by the auctioneer's agent, the card as signed reading as follows:

"I agree to purchase from   Mrs. Thomas Berry   the following property situated in the   7   Civil District of   Knox   Tenn., being   Lots No.

for which I agree to pay the sum of   $30,500.00   this being my bid at the sale this day held. When a deed is tendered me I agree to pay the sum of $   1/3   10, 17,   the balance payable in two equal payments due in one and two years, to be secured by lien on said estate.

"This the   1   day of   Aug.   1953
                                        "P. H. Moore"

Later in the day the "Residence" property and Lot No. 14 were grouped and auctioned off together at a bid of $39,500. However, this bid as well as the complainants' was rejected, and the defendants, within 3 days, returned to complainants their check for $3,000, which they refused to accept. Upon complainants' demand the defendants refused to execute a deed for the property, and thereafter complainants filed this suit.

The complainants' bill as amended avers in substance that the property was widely advertised in the newspapers, by printed posters, maps, etc., with "no reservation or right to confirm or approve" by the owners, the ads specifically stating that the sale would be held "rain or shine"; that if any conditions or reservations to confirm or reject were announced verbally by the auctioneer before the auction started, the same would not be binding on complainants who arrive late and did not hear the announcement; that the complainants' bid of $30,500 was confirmed when the auctioneer's agent accepted complainants' check for $3,000 and the signed purchase contract agreement in which appeared the written signature of Mrs. Thomas Berry, the owner; that complainants are ready and willing to perform their part of the purchase agreement, but that defendants have refused to comply therewith, and complainants prayed for specific performance or in the alternative for a decree for $3,000, or for such reasonable damages as may be justified by the proof.

To the bill the defendants filed a Plea in Bar which the parties as well as the Chancellor subsequently treated as an answer. In the answer the defendants admitted that Mrs. Berry was the owner of the property in question, and that on June 26, 1953, she authorized the Rader Land & Auction Company to offer her property "at auction", said auction to be held on Saturday, August 1, 1953, at 10 a.m., but it was specifically denied that Mrs. Berry authorized said property "to be auctioned without reservation."

The defendants averred that prior to the auction the auctioneer announced to the crowd assembled the terms, conditions and reservations governing the auction, two of the terms, etc., announced being as follows:

"We reserve the right to group any two or more lots or tracts in any way we see fit to get the owners the most money.

"All this property is sold subject to Owner's Confirmation."

Defendants further averred that by reason of the foregoing terms, etc., the defendants reserved the right to and did reject the complainants' bid; that under the said terms any two or more parcels of land to be auctioned could be grouped if more money could be obtained thereby for them, and that after complainants' bid the property in question and another lot were grouped and auctioned off together for $39,500, or $6,000 more than the combined bids of the two parcels when auctioned separately, and that this bid of $39,500 was likewise rejected by defendants.

Defendants also averred that the terms of a sale for the property were never reduced to writing by them, or by their agents, in such manner or form as constituted a binding obligation to sell the property to complainants, or that they, the defendants or their agents, kept a written record in such form or manner as constituted a memorandum of sale, obligating them to deliver a warranty deed to complainants; that no such written record was prepared or executed which would prevent the application of the Statute of Frauds upon which the defendants specifically relied, as set out in Code Section 7831 of the 1932 Code of Tennessee, as amended.

Much proof was taken by both sides, and upon the hearing the Chancellor rendered a decree in favor of the defendants and dismissed the complainants' bill. Thereafter the complainants perfected this appeal and they have assigned errors complaining principally because the

Chancellor held (1) that defendants, under the announced terms of the auction, reserved the right to confirm or reject all bids; (2) that the defendants rejected the complainants' bid within a reasonable time; (3) that defendants, under the announced terms of the auction, reserved the right to group or regroup any two or more of the lots during the auction, and (4) because the Chancellor sustained the defendants' plea of the Statute of Frauds.

■ While it appears that the complainants insisted below that they were not bound by the "terms and conditions" of the auction, by reason of not having heard the auctioneer announce that the owners reserved the right to confirm all bids, it seems that this issue has now been abandoned, and we find, as did the Chancellor, that the evidence overwhelmingly shows that the terms etc., were announced just prior to the auction, and that complainants' bid as well as all other bids were subject to said terms.

However, it is urged on behalf of the complainants that when the auctioneer's hammer fell and he announced that the property was "Sold to the gentleman over there," meaning Mr. Moore, and further when Mr. Moore signed the purchase agreement and the auctioneer's agent accepted Mrs. Moore's check for $3,000, that these acts constituted a confirmation of the sale by the defendants, and that for these reasons complainants are entitled to have the property conveyed to them.

According to the undisputed proof, the blank spaces on the agreement to purchase card signed by Mr. Moore were filled in by the Auction Company's agent for the Company's information, and nowhere on the card is there any writing by either of the defendants indicating their confirmation of the agreement. The fact that Mrs.

Berry's name was filled in on a blank space of the card with a pen, by the Auction Company's agent, has no significance, as the card was only intended to show the name of the bidder and the amount of the bid, and the appearance of her name thereon did not indicate acceptance of complainants' bid. At most the complainants' bid was a mere offer to purchase, subject to the defendants' confirmation or rejection.

On Tuesday morning following the auction on Saturday, the defendants notified Mr. Moore that his bid of $30,500 had been rejected, and during the afternoon the defendants' attorney returned Mrs. Moore's check to complainants by registered mail, which they refused to accept and returned it to defendants. This short delay in notifying complainants that their bid had been rejected and in returning their check was not unreasonable, and no insistence is made that complainants suffered any damages thereby.

As previously pointed out the terms, etc., of the auction expressly provided that the defendants reserved the right to group any two or more of the lots or tracts and all sales were subject to their confirmation. To sustain the complainants' argument under these circumstances would render the announced conditions under which the auction was held as meaningless, and we find no merit in the complainants' insistence that their bid was confirmed.

It seems to be a settled rule in this state as well as elsewhere that conditions prescribed by the seller or owner and announced at the time and place of the auction are binding on the purchaser whether or not he knew or heard them. Whitfield v. May, 19 Tenn. App. 431, 89 S. W. (2d) 764; American Nat. Bank of Nashville v. West, 31 Tenn. App. 85, 212 S. W. (2d) 683, 4 A. L. R. (2d) 314;

Vanleer v. Fain, 25 Tenn. 104; United States v. Blair, 10 Cir., 193 F. (2d) 557; Erie Coal & Coke Corp. v. United States, 266 U. S. 518, 45 S. Ct. 181, 69 L. Ed. 417.

The general rule is stated in 5 Am. Jur., as follows:

"It is settled beyond dispute that an advertisement of an auction is not an offer to sell which becomes binding, even conditionally, on the owner when a bid is made. On principle and authority, the correct rule is that an announcement that a person will sell his property at public auction to the highest bidder is a mere declaration of intention to hold an auction at which bids will be received." Sec. 14, p. 454.

"It is the right of the owner of property sold at auction to prescribe, within reasonable limits, the manner, conditions, and terms of sale. Usually the auctioneer, at the time and place appointed for the auction, announces these terms and conditions. * * * Terms and conditions so announced generally are deemed to supersede all others and to bind the purchaser even though he did not hear or understand the announcement or was not present at the time of the announcement and such terms were not brought to his actual attention." Sec. 15, p. 454.

"The majority of the courts which have passed on the question hold or assume that between the fall of the hammer and the signing of the memorandum, the auctioneer's authority to sign a memorandum may be revoked, by either the seller or the purchaser. This view accords with the rule adopted by the American Law Institute to the effect that the power of the auctioneer and of his clerk to sign a memorandum may be revoked by a buyer or seller at any time before the power is exercised." Sec. 30, p. 467.

██ Inasmuch as we have concluded, as did the Chancellor, that the defendants reserved the right under the announced terms and conditions of the auction to confirm or reject complainants' bid, we are content to affirm the decree on that ground. This makes it unnecessary for us to pass upon the complainants' remaining assignments.

Affirmed at appellants' costs.

McAmis, P. J., (Eastern Section) and Hale, J., concur.