[No. 34933. *En Banc.* December 24, 1959.]

CONTINENTAL CAN COMPANY, INC., *Respondent,* v. COMMERCIAL WATERWAY DISTRICT NO. 1 OF KING COUNTY *et al., Appellants.*[1]

[1]Reported in 347 P. (2d) 887, 354 P. (2d) 25.

*Taylor & Taylor, Charles O. Carroll,* and *K. G. Smiles,* for appellants.

*Summers, Bucey & Howard, Lane Summers,* and *Richard. W. Buchanan,* for respondent.

HUNTER, J.—This is an action instituted by the plaintiff corporation against the defendant Commercial Waterway District No. 1 and its commissioners, to compel the defendants to issue a deed and title insurance to the plaintiff for certain property which the plaintiff alleges it purchased at public auction. The facts are not in dispute.

In pursuance of Laws of 1911, chapter 11, § 8, p. 21, RCW 91.04.200; Laws of 1945, chapter 254, § 7, p. 762, RCW 36.34-.080; Laws of 1945, chapter 254, § 8, p. 762, RCW 36.34.090; and Laws of 1945, chapter 254, § 9, p. 762, RCW 36.34.100, certain real property belonging to the defendant district was advertised for sale at public auction. The property consisted of a small strip of real estate which was a part of the abandoned bed of the Duwamish river. The auction was conducted in the regular manner and the notice of sale was posted and published as required by statute. The following language appears in the notice of sale:

" . . . The commissioners reserve the right to reject any and all bids received. . . . "

On the day of sale, June 4, 1958, the auctioneer read the notice of sale prior to the call for bids, omitting only the description of the property. Plaintiff was the sole bidder. The auctioneer accepted the bid and announced the property was "knocked down" to the plaintiff who promptly paid ten per cent ($76) of the cash bid of $760 to the King county treasurer. On August 1, 1958, plaintiff tendered the balance of the bid in the sum of $684, which was refused. On the same day, at a regular meeting of the commissioners of the water district, the bid was rejected by resolution on the ground that it was insufficient in amount. On August 4, 1958, by letter, the King county treasurer tendered the $76 deposit to the plaintiff, which was refused and this action was begun.

After the issues were joined by the filing of defendants' answer and plaintiff's reply, plaintiff filed affidavits supporting the allegations in the complaint, which were not controverted. Both parties moved for a summary judgment, there being no genuine issue of material fact. Rule of Pleading, Practice, and Procedure 19, 34A Wn. (2d) 29, as amended, effective November 1, 1955. The motion of the plaintiff was granted and judgment was entered accordingly on the pleadings, compelling the issuance of a deed on the said property to the plaintiff by the defendant water district, and the procuring and furnishing of a title insurance policy as provided in the terms of sale. The defendants appeal.

Appellants' assignments of error raise one issue. Could the commissioners for the water district exercise the reservation in the notice of sale " . . . the right to reject any and all bids received," after the auctioneer had accepted the bid of the respondent, being the highest and best bid, and announcing that the property was "knocked down" to the respondent?

The cases upon which the respondent relies, *McPherson Bros. Co. v. Okanogan County*, 45 Wash. 285, 88 Pac. 199 (1907); *State ex rel. Friedlander v. Dunning*, 132 Wash. 622, 233 Pac. 8 (1925); *Farrell v. Neilson*, 43 Wn. (2d) 647, 263 P. (2d) 264 (1953), do not relate to an auction sale where a

reservation was contained in the notice of sale. We find only one Washington case, *Phillips v. Welts*, 40 Wash. 501, 82 Pac. 737 (1905), which is factually similar to the instant case, but that case is of no assistance here because the decision there was based upon an express provision of a statute, not now before us.

■ The law, however, seems to be well settled, as related to the particular facts of this case, that the reservation may be exercised *after sale*, both in the texts and decisions of other states. 5 Am. Jur. 454, Auctions, § 15, reads in part as follows:

"It is the right of the owner of property sold at auction to prescribe, within reasonable limits, the manner, conditions, and terms of sale. Usually the auctioneer, at the time and place appointed for the auction, announces these terms and conditions. . . . Terms and conditions so announced generally are deemed to supersede all others and to bind the purchaser even though he did not hear or understand the announcement or was not present at the time of the announcement and such terms were not brought to his actual attention. *The conditions of sale may be incorporated in an advertisement of the auction; in such case, a reference thereto at the time and place of sale is a sufficient announcement of the terms and conditions of the sale. . . .*" (Italics ours.)

In *Moore v. Berry*, 40 Tenn. App. 1, 288 S. W. (2d) 465 (1955), a notice of sale at public auction contained, among others, the following reservation:

" ' . . . We reserve the right to group any two or more lots or tracts any way we see fit to get the owners the most money. *All this property is sold subject to the owners confirmation.*' " (Italics ours.)

In holding that the owners had the right to exercise the above reservation *after sale*, the court stated:

"It seems to be a settled rule in this state as well as elsewhere that conditions prescribed by the seller or owner and announced at the time and place of the auction are binding on the purchaser whether or not he knew or heard them. *Whitfield v. May*, 19 Tenn. App. 431, 89 S. W. (2d) 764; *American Nat. Bank of Nashville v. West*, 31 Tenn. App. 85, 212 S. W. (2d) 683, 4 A. L. R. (2d) 314; *Vanleer v. Fain*, 25

Tenn. 104; *United States v. Blair,* 10 Cir., 193 F. (2d) 557; *Erie Coal & Coke Corp. v. United States,* 266 U. S. 518, 45 S. Ct. 181, 69 L. Ed. 417."

The court further stated:

"The general rule is stated in 5 Am. Jur., as follows: " ' . . .' Sec. 15, p. 454."

See, also, *Erie Coal & Coke Corp. v. United States, supra.*

In the instant case the condition was prescribed by the seller in the notice of sale. It was announced by the auctioneer when he read the notice of sale just prior to the sale, in the presence of the respondent. This express reservation of the appellants "to reject any and all bids received" became a condition and term of the sale, which was binding upon the respondent purchaser.

■ The respondent argues there is no statutory authority for the insertion of such a condition. We believe the legislature, in giving the water commissioners the authority to sell property at public auction, necessarily gave them the implied authority to fix the terms and conditions of the sale.

■ The respondent also argues that the reservation must be exercised by the auctioneer prior to the sale; that he was the agent of the owner (seller), and by accepting the bid he exercised the reservation in the owner's behalf. This contention is untenable in light of the above rule of law. The announcement by the auctioneer of the owner's reservation "to reject any and all bids received" constituted notice given *by the agent of the owner of a right to be exercised by the owner after the sale.*

■■ The respondent further argues the rejection was untimely. There being no limitation on the time for rejection of the bid, the owner was entitled to a reasonable time to exercise this right of rejection. We cannot say that the period from June 4 to August 1, 1958 was an unreasonable time since there has been no showing of damage or prejudice to the respondent.

The trial court committed error in compelling the appellants to consummate the sale. The judgment is reversed.

WEAVER, C. J., MALLERY, FINLEY, and OTT, JJ., concur.

DONWORTH, J. (dissenting)[2]—The result of the majority opinion is to permit a commercial waterway district to repudiate a statutory sale of land made at public auction for $760 by notifying the purchaser two months after its consummation that its bid is to be rejected because of inadequacy in amount.

This holding is predicated upon the following provision which was included in the published notice of sale:

". . . The commissioners reserve the right to reject any and all bids received."

In stating the reasons for my dissent, I think it is desirable to state in more detail what occurred at the county treasurer's sale on June 4, 1958, and thereafter.

The deputy treasurer, acting as auctioneer, called for bids on the subject property. Respondent bid $760. The auctioneer then called twice for other bids. No response being made, he declared the property sold to respondent.

Present at the sale, in addition to one of respondent's attorneys and three other representatives, were appellants' attorney and the commercial waterway district's secretary (who was also one of its commissioners).

Upon respondent's bid being accepted by the auctioneer, one of respondent's representatives produced its check for ten per cent of the sale price. This check had already been made payable to appellant instead of to the county treasurer. Thereupon, the check was endorsed by commercial waterway district No. 1, by its secretary, in the presence of its attorney, and delivered to the auctioneer. The check was later duly honored by the bank on which it was drawn.

Neither the secretary of the commercial waterway district No. 1 nor its attorney indicated to the representatives of respondent any dissatisfaction whatsoever with the transaction at, before, or after the sale.

Subsequent to the auction sale, the waterway district's commissioners held regular meetings on June 6, 1958, and July 11, 1958, at which no action was taken with reference

---

[2]Upon rehearing this dissent was substituted for the dissent originally filed in this case.

to this sale except to postpone action thereon. At the commissioners' meeting on August 1, 1958, they repudiated the sale on the ground that the price was insufficient in amount.

Respondent then tendered the balance of the sale price ($684) and, upon appellants' refusal to accept it, demanded a conveyance of the land. Thereafter, respondent instituted this action for specific performance and deposited this sum in the registry of the court. The trial court granted respondent's motion for summary judgment and entered a decree awarding the relief prayed for.

The narrow question presented is whether a sale of real property owned by a commercial waterway district, conducted by the county treasurer at a public auction pursuant to RCW 36.34.080, is complete and final when it is knocked down to the only bidder, where the notice of sale reserves to the district the right to reject any and all bids.

The authorities cited in support of the majority opinion relate to auction sales between private parties. I fail to see what bearing they have upon the problem here before us, which concerns the powers of a public body that has no authority to sell any property except in the manner and to the extent authorized by the legislature. The waterway district has no power to perform any act not expressly or by necessary implication authorized by statute.

Accordingly, we must refer to the pertinent statutory provisions to ascertain the powers of the waterway district to sell real property.

The power to sell property is given to the waterway district in RCW 91.04.200, which provides that such property may be sold "in the same manner as county property is sold." See *Commercial Waterway Dist. No. 1 v. State*, 50 Wn. (2d) 335, 311 P. (2d) 680 (1957).

There being no dispute of fact or question as to the regularity in the conduct of the public auction, we need only interpret the language of those statutes relating to the sale of county property.

RCW 36.34.010 provides, in part:

"Whenever it appears to the board of county commissioners that it is for the best interests of the county and the taxing districts and the people thereof that any part or parcel, or portion of such part or parcel, of property, whether real, personal, or mixed, belonging to the county should be sold, the board shall sell and convey such property, under the *limitations* and *restrictions* and *in the manner* hereinafter provided." (Italics mine.)

The statute then sets forth those limitations and restrictions under which the county may sell property and expressly states what rights may be *reserved* in the sale.

RCW 36.34.060 provides that sales of *personalty,* with certain exceptions, must be for *cash.*

RCW 36.34.100 states:

"The notice of sale of county property must particularly describe the property to be sold and designate the day and hour and the place of sale. If *real property* is to be sold *on terms,* the terms must be stated in the notice." (Italics mine.)

Thus, the applicable statute provides that personal property must generally be sold for cash while real property may be sold on *terms.* Manifestly, the word "terms" as it is here used means *financial terms,* and does not refer to or encompass any *reservations.*

RCW 36.34.080 provides:

"All sales of county property ordered after a public hearing upon the proposal to dispose thereof *must be made by the county treasurer* at a designated place in the courthouse *to the highest and best bidder at public auction."* (Italics mine.)

As I read the statutes cited above, the sale is complete when a bid is accepted by the county treasurer who acts as auctioneer. I cannot find anything therein which would authorize the commissioners to repudiate a valid statutory contract between the waterway district and the sole bidder *after* an offer has been made and accepted by the county treasurer, who is the district's statutory agent.

The majority dismisses the case of *Phillips v. Welts,* 40 Wash. 501, 82 Pac. 737 (1905), because it was based upon

an express statutory provision not now before us. In my opinion, that case is decisive of the issue here.

The *Welts* case, *supra,* was a mandamus proceeding instituted by respondent to compel the county treasurer to execute to him a deed to a certain lot in the city of Anacortes, which respondent allegedly purchased at a public auction. The lot had theretofore been acquired by the county pursuant to tax foreclosure proceedings. The sale in question was made pursuant to the act of March 9, 1903, Laws of 1903, p. 73. The published notice of sale contained the following language:

"Notice is hereby further given that all sales are subject to the approval of the board of county commissioners."

At the auction, respondent was the highest and best bidder and the property was knocked down to him. Subsequently, the board of county commissioners refused to confirm the sale and respondent brought suit. Respondent's contention, which was upheld by the trial court, was that the board had no authority in law to place such a restriction or condition upon the sale of the property.

On appeal, this court reversed the judgment of the trial court on the ground that the applicable statute authorized such a reservation. The statute, which was then in effect, provided that the county treasurer's notice of sale must state the time, place, and *terms of sale.*

This court, in construing the phrase "terms of sale" stated:

". . . The statute expressly provides that the commissioners may fix the 'terms' upon which the sale shall be made. It is suggested that this refers to the *financial terms;* but this could hardly be true in the light of the *statutory provision that the sale must be made for cash.* . . ." (Italics mine.)

In the instant case, we have no statutory language that is even analogous to that involved in the *Welts* case, *supra.* Although the statutes do authorize the sale of real property on *terms,* it is clear, as we have already shown, that this means *financial terms* only.

The statutes relating to the sale of county property pre-

scribe the manner in which a valid contract of sale shall be created. They do not grant the seller the right to repudiate such contract two months after the sale has been completed.

No statutory authority being shown which supports the waterway district's position in this case, I would affirm the trial court's judgment.

HILL, ROSELLINI, and FOSTER, JJ., concur with DONWORTH, J.

[*En Banc.* July 7, 1960.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the *En Banc* opinion heretofore filed.

