**L. M. COLEMAN, Plaintiff-Appellant,**

**v.**

**John DUNCAN and Jerry Bartle, d/b/a J. B. Implement Co., Defendants-Respondents.**

**No. 9817.**

Missouri Court of Appeals, Springfield District.

July 20, 1976.

Motion for Rehearing or to Transfer to Supreme Court Denied Aug. 9, 1976.

Application to Transfer Denied Oct. 12, 1976.

Kenneth W. Shrum, Marble Hill, for plaintiff-appellant.

John Z. Williams, Northern, Williams & Smallwood, Rolla, for defendants-respondents.

PER CURIAM:

At an advertised public auction held by defendant Jerry Bartle, d/b/a J. B. Implement Co. and described in the printed sale bill as "owner," a hammerless auctioneer (with the declaration "sold") struck off a D–7 tractor to plaintiff upon acceptance of the latter's $2,050 bid. Although the D–7 tractor was listed on the printed sale bill (along with some 200 other items of equipment) without indication that it belonged to anyone other than defendant Bartle, the tractor was actually owned by defendant Duncan. As later explained by defendant Bartle, a few items belonging to his friends and customers had been included in the auction "as a courtesy deal." No sale conditions were contained in the sale bill. After the D–7 tractor was struck off and while plaintiff was attempting to make payment of his bid, defendant Duncan, as owner of the tractor, stated that he would not sell the tractor for the amount of plaintiff's bid which had been accepted by the auctioneer. Plaintiff's tender was refused and he brought the instant action to recover damages for alleged breach of contract. Following a bench trial and judgment for defendants, plaintiff appealed. The trial court did not make written findings of fact or conclusions of law.

The auction site consisted of a two- to four-acre tract. The selling commenced near 9:30 a. m. and the D–7 tractor was not struck off to plaintiff until close to 4:30 p. m. Some "miscellaneous items" were sold before the sale of "bigger merchandise and hard items" was undertaken. When the second truck was put up for sale, defendant Bartle took the speaker from an auctioneer and announced, according to his testimony, that " 'There are a few items at the sale here today that does [sic] not belong to me or J. B. Implement Company. . . . The stuff that belongs to J. B. Implement Company we are definitely going to try to sell if you will get in and bid . . . but these other items that belong to other people . . . [t]hey have the right to reject any or all bids on these items.' " One of the auctioneers said the announcement made by defendant Bartle was "that there were several items in the sale he did not own, they were assigned by customers and friends, they would have the right to 'No Sale' them if they weren't satisfied with the price." Plaintiff and his companion at the sale testified they had heard no announcements to the effect related by defendant Bartle and the auctioneer, and indicated the possibility that they had arrived at the auction site after the averred announcements had been made.

With possible exception of a cultivator and some planters, the "few items" or "several items" being offered at the auction which belonged to persons other than defendant Bartle were never described to the bidders or known to be such by the auctioneers. No announcement was made prior to offering the D–7 tractor that it was not owned by defendant Bartle or that it was subject to the owner's right to reject bids. Both defendants were close by when the auction of the tractor was taking place, but neither said anything regarding its owner-ship or that its sale was subject to any condition.

The basic statute governing sales by auction is § 400.2–328, V.A.M.S. As pertinent here, it states: "(2) A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner.[1] . . . (3) Such a sale is with reserve unless the goods are in explicit terms put up without reserve. In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale. In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time. . . ."

At the particular auction under consideration the goods were not "in explicit terms put up without reserve." Therefore, we may uncomfortably assume the auction was one "with reserve" since that " 'is the normal procedure' ". *Drew v. John Deere Company of Syracuse, Inc.,* 19 A.D.2d 308, 241 N.Y.S.2d 267, 270 (1963). We say "uncomfortably assume" because it could be logically argued that defendant Bartle's announcement, ante, would justify an interpretation that the auction, as it pertained to goods owned by him was one "without reserve." 1 Williston on Contracts, § 29, at p. 69. As indicated by subsec. 3 of Sec. 400.2–328, supra, unless otherwise provided, the owner's right at an auction with reserve to reject any and all bids must be exercised before acceptance by the auctioneer of the successful bid. The auctioneer is the seller's agent, whose act of accepting a bid is binding on his principal, and the seller has no right to reject a bid once it has been accepted and the bidder has delivered or tendered the required payment. *Collins v.*

---

1. In addition to "the fall of the hammer," expressions such as " 'going, going, gone' ", "sold", etc. constitute "other customary manner[s]" for demonstrating the completion of a sale by auction. 1 Corbin on Contracts, § 108, at p. 485; 7 Am.Jur.2d, Auctions and Auctioneers, § 31, p. 248. We cannot agree with *Bradshaw v. Thompson,* 454 F.2d 75, 80 (6th Cir. 1972), cert. denied, 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972), that the term "other customary manner" relates to conditions imposed by an owner upon a sale by auction, and lament the confusion caused by some writers who use "terms" and "conditions" of auction sales interchangeably and erroneously as synonymous, which they are not.

*Heitman,* 225 Ark. 666, 284 S.W.2d 628, 632[3–5] (1955).

Assuming, as we have done, that the major part of the auction was one with reserve and governed by the statute and general principles just noted, what of the auction as it related to the sale of items belonging to persons other that defendant Bartle who allegedly claimed the right to "No Sale" or reserved the right to reject any and all bids? Albeit was said in 1 Corbin on Contracts, § 108, at p. 483, a statement "that 'the privilege is reserved to reject any and all bids,' . . . is merely evidence that the goods are not being offered 'without reserve,' " or in other words that the sale is "with reserve," there appears to be authority that such a reservation sets a sale apart from the garden variety of auctions with reserve.

■ "It is the right of the owner of property sold at auction to prescribe, within reasonable limits, the manner, conditions, and terms of sale [*Jones v. Tennessee Valley Authority,* 334 F.Supp. 739, 743[2] (D.C. Fla.1971)]. Usually the auctioneer, at the time and place appointed for the auction, announces these terms and conditions which, when so announced, are generally deemed to supersede all others and to bind the purchaser even though he did not hear or understand the announcement, or was not present at the time of the announcement and such terms [or conditions] were not brought to his actual attention." 7 Am.Jur.2d, Auctions and Auctioneers, § 18, p. 236. "Where the seller reserves the right to refuse to accept any bid made, a binding sale is not consummated between the seller and the bidder until the seller accepts the bid. Furthermore, where a right is reserved in the seller to reject any and all bids received, the right may be exercised by the owner even after the auctioneer has accepted a bid, and this applies to the auction of public as well as private property." Id. § 20, at p. 238.

In cases involving auction sales advertised or announced by the auctioneer that " 'The commissioners reserve the right to reject any and all bids received' " [*Conti-nental Can Co. v. Commercial Waterway Dist. No. 1 of King County,* 56 Wash.2d 456, 347 P.2d 887 (1959), aff'd 354 P.2d 25 (1960)], or that "All this property is sold subject to Owner's Confirmation" [*Moore v. Berry,* 40 Tenn.App. 1, 288 S.W.2d 465 (1955)], or that " 'The State Forester reserves the right . . . to reject any or all bids' " [*Eugene Stud & Veneer, Inc. v. State Bd. of Forestry,* 3 Or.App. 20, 469 P.2d 635 (1970)], or that "Cosigners [sic] will have the privilege of no sale if they do not wish to sell for the last bid on the animal" [*Bradshaw v. Thompson,* supra n. 1, 454 F.2d 75], or that the commissioner reserves the right to " 'reject any or all bids if in his judgment he deemed it for the best interests of the city' " [*City of New York v. Union News Co.,* 222 N.Y. 263, 118 N.E. 635 (1918)] it was held that the rights thereby reserved in the seller could be exercised by the owner even after the auctioneer had knocked down the property to the highest bidder.

If we should, arguendo, accept the foregoing principle that the seller's expressly reserved right to reject any and all bids may be exercised even after the auctioneer accepts the highest bid, we need remember that the texts and cases so holding were solely concerned with situations where the condition imposed applied to all of the items being offered for sale by auction. We have been cited no authority and have found none dealing with heterogeneous auctions, i. e., where the auction, in general, was not subject to conditions save those that may be inherent in an auction "with reserve," but interspersed among the items offered for sale were "a few" unspecified items owned by unidentified persons claiming the right to "No Sale" or the right to reject any and all bids. Although an item or more may have been identified as belonging to someone other than defendant Bartle and subject to the condition above mentioned, it is undisputed that the D–7 tractor was never said to be the property of defendant Duncan or otherwise isolated as being subject to any condition before being struck off to the plaintiff by the auctioneer.

It may be true that at auctions where all items are subject to the same condition, a bidder, though ignorant thereof, is affected thereby if the condition be one which he should have reasonably understood to exist or which he should have ascertained (1 Williston on Contracts, § 29, at pp. 69–70); however, we do not find it reasonable to hold a bidder to be affected by a condition not applicable to the great majority of the sale items but only to a limited number of items which are never identified as being subject to the condition. In our view, a condition to be properly imposed at a "heterogeneous auction" (our label), should be specifically applied to the particular item upon which it is sought to be imposed, and the failure of the auctioneer, or the holder of the auction, or the owner of the involved item, to specifically state, mark or otherwise identify which item or items are subject to the special condition, at least in the published sale bill or by appropriate announcement during the auction, does not adequately impose the condition or affect the bidder with it.

As previously noted, the trial court made no findings of fact or conclusions of law. Neither did it indicate by "brief opinion . . . the grounds for its decision". Rule 73.01–1(b), V.A.M.R. Therefore, not knowing the basis for its finding for defendants, considerable effort has been expended brief-wise by plaintiff to show trial court error in permitting defendants' evidence regarding custom and usage when it had not been pleaded by defendants in their answers. *State ex rel. H. K. Porter Company, Inc. v. Nangle,* 405 S.W.2d 501, 504[8] (Mo.App.1966). Although the clear direction of defendants' evidence at trial, received over plaintiff's objections, was to show a general auction custom allowing rejection after a bid is accepted without prior specific reservation of such a right, defendants now say "[t]he issue between the parties is not the custom of 'no sale'. The issue rather is whether an owner of property sold at an auction may refuse the highest bid after the auctioneer has announced the property 'sold' when conditions reserving the owner's right to refuse all bids have been announced. The evidence of custom in this case was mere evidentiary matter bearing upon the owner's right to impose conditions on the sale, i. e., his right to refuse all bids." Thus having abandoned their initial claim that a substantive right of "No Sale" existed through usage and custom, we are saved a wearisome forage among the not-too-clear cases to determine whether custom and usage was required to be pleaded here, whether the evidence relating thereto was substantive or evidentiary, and what role the Uniform Commercial Code may have otherwise played in the matter. The emphasis on this appeal has, therefore, been shifted to whether or not an effective explicit condition was placed on the sale of the D–7 tractor. We have, of course, heretofore concluded that under the facts peculiar to the auction in question, it was not.

Plaintiff and defendants have suggested that if we determine the judgment nisi should have been for plaintiff, which we have done, we should enter judgment for damages. The parties suggest varying amounts and as the evidence on the subject of damages was in dispute and widely varied, we have no confidence that we could determine the proper amount of damages in this case. Also, the trial court having found for defendants, naturally did not lay any basis from which we could properly conclude what plaintiff's damages should be and we cannot direct a judgment for plaintiff in any given amount. *Lindsborg Milling & Elevator Co. v. Danzero,* 189 Mo.App. 154, 174 S.W. 459, 461[4] (1915).

The judgment is reversed and the cause is remanded for determination of plaintiff's damages only.

All concur.