JANE GREEN, *et al. v.* JOE M. CRYE, *et al.**

(*Knoxville*. September Term, 1928.)

Opinion filed December 8, 1928.

---

*On the question as to authority and agency of auctioneers, generally, see 2 R. C. L., 1119; 1 R. C. L. Supp., 709.

*Corpus Juris-Cyc References: Auctions and Auctioneers, 6CJ, section 10, p. 824, n. 33; section 61, p. 843, n. 32; Frauds, Statute of, 27CJ, section 366, p. 294, n. 80.

STEWART & TAYLOR, for complainant, appellant.

JOHN D. PENLAND, for defendant, appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The original bill having been dismissed by the Chancellor on demurrer, complainants have appealed to this court.

The cause of action stated in the bill is one for fraud and deceit. It is averred that the defendants, Joe M. Crye, Jim Axley and John Kimbrough, employed by the defendants, William Lambert and wife, Elizabeth Lambert, as auctioneers, sold at auction a number of parcels of real estate, including a tract purchased by the complainants at the price of $3078, and that the said auctioneers, both at the time of the auction and subsequently, when the trade was consummated, represented to complainants that the title to the property purchased by them was unencumbered in the said Lamberts, a representation false in fact, and known to be false by the defendants. After complainants had entered into possession of the land, they were informed that it was encumbered by a registered mortgage in the sum of $2250, which

mortgage was foreclosed, resulting in the eviction of the complainants prior to the institution of the suit.

The bill discloses that the Lamberts had removed from Tennessee, and were nonresidents, and they were not before the court at the time of the decree from which the appeal is being prosecuted.

The averments of the bill with reference to the alleged wrong of the three defendants, described as auctioneers, are more particularly that they announced at the sale that the title was clear, and that there were in fact no encumbrances against the property. Complainants, being without business experience, relied upon the warranties, statements and representations so made, both at the time the memorandum of the sale was executed, and later when the cash payment and notes for the purchase price were paid and delivered and the deed accepted, the deed having been prepared by Joe M. Crye, and the acknowledgments of the vendors taken by him as a notary public. After learning of the outstanding encumbrance, complainants interviewed the auctioneers and were told by them that they knew of the existence of the mortgage at the time of the sale, but supposed the Lamberts would pay it off out of the proceeds. During the interval between the execution of the deed by the Lamberts and the eviction of the complainants, defendants knew that the mortgage had not been paid and knew that complainants were paying the deferred payments of the purchase price, and that these payments were not being applied to the satisfaction of the mortgage; a part of the original cash payment was paid by complainants to the defendant, Joe M. Crye, and "practically all of the payments of purchase money notes were made to defendant Crye," as agent of the vendors. One-third of the total consideration was

paid in cash, and for the deferred payments complainants executed three notes in the sum of $684 each, all of which, except $100, complainants have paid.

The bill avers that if complainants had known of the outstanding mortgage, they would not have paid for the property, nor accepted a deed, and that the action of the three defendants, auctioneers, in withholding the true information and in representing the title as free from encumbrances, constitutes a fraud upon complainants.

The demurrer interposed by the three defendants, auctioneers, contains two grounds:

First, that the bill discloses that demurrants were employed only as auctioneers and as agents of Lambert and wife, and that the covenants made were those of the vendors and not of the demurrants, as agents.

*(1)* Second, that the bill discloses that the outstanding mortgage against the property purchased by complainants was duly of record at the time of the purchase by complainants, and that complainants were, therefore, charged with knowledge of the facts.

The second ground of the demurrer is manifestly without merit. The complainants are not now asserting any title to or interest in the property described in the registered mortgage, and the rights of the grantee named in such instrument are not here involved. *Frizzell* v. *Rundle & Co.,* 88 Tenn., 396; *Embry* v. *Galbreath,* 110 Tenn., 297, 301.

In *Frizzell* v. *Rundle & Co.,* this court said:

"The constructive notice consequent upon registration attaches only to persons who subsequently assert any title, charge, or lien, or interest in the property described in the registered instrument, and only in favor of the grantees in such instrument. It is, for instance, well

settled that a subsequent purchaser from the grantor will not, as between himself and such grantor, be charged with notice of the state of his vendor's title as shown by the registered title. He may, as between himself and his grantor, rely upon the representations of the latter to his title, and will not be bound by the registered title of which he has not actual notice. *Napier* v. *Elam*, 6 Yerg., 108; *Ingram* v. *Morgan*, 4 Humph., 66; *Topp* v. *White*, 12 Heisk., 165."

*(2)* It has long been the rule in this State that an action on the case will lie for a fraudulent representation as to title, in the sale of land. *Gwinther* v. *Gerding*, 40 Tenn. (3 Head), 97; *McLean* v. *Houston*, 49 Tenn. (2 Heisk.), 37; *Merriman* v. *Norman*, 56 Tenn. (9 Heisk.), 271.

*(3)* The cause of action stated in the bill against the three defendants, who acted as auctioneers, is not confined alone to the false representation as to the title, made at the time of the auction, and upon the faith of which the complainants made their bid, but includes the subsequent conduct of these defendants in withholding their information as to the existence of the encumbrance, while assisting the vendors in the preparation and execution of their deed, and in acting as the agents of the vendors in the collection of a portion of the cash payment and of the deferred payments.

*(4)* A person employed as an auctioneer at the sale of property, real or personal, is primarily the agent of the owner or vendor. In making a sale, to evidence which a writing signed by the person to be charged is necessary, the auctioneer is also treated as the agent of the purchaser, for the purpose of making the written evidence at the time of the sale, but his authority to repre-

sent the purchaser is thus limited. Meacham on Agency (2 Ed.), sec. 2320.

*(5)* It has been frequently ruled that when the purchaser at an auction sale deposits with the auctioneer a sum of money, to be applied on the purchase price, and the auctioneer has knowledge or information of a defect in the title of the seller which will prevent him from completing the sale, the auctioneer is liable to the purchaser for the return of the deposit even though, prior to demand and suit, he has delivered the deposit to the seller for whom he was acting as agent.

In *Edwards* v. *Hodding,* 5 Taunt., 815, 1 E. C. L., 416, 128 English Reprint, 913, 915, it was held:

"The defendant (auctioneer) receives it (the deposit), knowing the condition, that there should be a good title; and he knows that that condition is not performed; he nevertheless takes on himself, with this knowledge, to pay over the money, which he was not warranted in doing; and therefore the judgment must be for the plaintiff."

See, also, 6 Corpus Juris, 843; Ruling Case Law, vol. 2, p. 1154; *Alexander* v. *Coyne,* 143 Ga., 696, L. R. A. 1916D, 1039; Note, Ann. Cas. 1912D, 721.

The case of *Embry* v. *Galbreath,* 110 Tenn., 297, is not in conflict with the rule just stated, since the demand for the return of money denied in that case was not made by the person by whom it had been paid to the agent.

While the bill in the present cause fails to disclose that the defendants received a deposit from complainants, to be applied on the purchase price upon the transfer of title, the fact that the agreement to purchase had been induced by their false representation that the title was clear, would be sufficient to charge them with the

duty to complainants of declining to turn over the payments on the purchase price which subsequently came into their hands, without requiring the vendors to first satisfy the outstanding encumbrance. The authorities above cited clearly support the complainants' right to recover the money which they paid to the defendants, as agents of the vendors, under the facts stated in the bill.

(6) It is our conclusion moreover that the facts pleaded are sufficient to show complainants' right to recover from the defendants, auctioneers, the full amount of the purchase price, which they were induced to pay by the false and fraudulent representations and conduct of these defendants.

In *Ingram* v. *Morgan,* 23 Tenn. (4 Humph.), 66, this court, speaking through REESE, J., said:

"The confidence between vendor and vendee requires where such defects of title as those of the case before us existed at the time of the sale, that they should be stated by the vendor to the vendee, and the suppression of them amounts to fraud."

In that case the vendor, representing himself as the owner of a fee-simple title, had in fact only a bond for title.

In *Arnot* v. *Biscoe* (1734), 1 Vesey, Sr., 96, 27 English Reprint, 914, it was held by the Lord Chancellor:

"And if the attorney or vendor of an estate, knowing of encumbrances thereon, treats for his client in the sale thereof without disclosing them to the purchaser or contractor, knowing him a stranger thereto, but represents it so as to induce the buyer to trust his money upon it, a remedy lies against him in a court of equity; to which principle it is necessary for the court to adhere, to preserve integrity and fair dealing between man and man;

most transactions being by the intervention of an attorney or solicitor.''

This simple statement of the equities arising in favor of the injured parties, in a transaction of the kind disclosed in complainants' bill, is well supported by authorities of more recent date in this country. Am. & Eng. Ency. of Law (2 Ed.), vol. 1, pp. 1135-1136; Meacham on Agency (2 Ed.), sec. 1458; *Caulkins* v. *Gas-light Co.*, 85 Tenn., 638, 4 Am. St. Rep., 786; *Reed et al.* v. *Peterson*, 91 Ill., 288, 297; *Shipherd* v. *Underwood*, 55 Ill., 475; *Moore et al.* v. *Shields*, 121 Ind., 267; *Hardy* v. *American Express Co.*, 182 Mass., 325, 59 L. R. A., 731; *Campbell* v. *Hillman* (Ky.), 15 B. Monroe, 508, 61 Am. Dec., 195.

In *Campbell* v. *Hillman, supra,* the Court of Appeals said:

''An agent is responsible individually to a purchaser for a fraud committed by him in the sale of property, although he does not profess to sell the property as his own, but acts throughout in his capacity as agent; Sugden on Vendors, 6.''

*(7)* *Campbell* v. *Hillman, supra,* was cited in *Reed* v. *Peterson, supra,* together with other authorities, for the proposition that: ''In an action at law for damages, the fact that a defendant acted throughout in the capacity of agent, in a fraud perpetrated by him, will afford him no excuse.''

In *Caulkins* v. *Gas-light Co.*, 85 Tenn., 683, the Gaslight Company was held liable for its neglect of duty to its stockholder of record in negligently permitting one Wurzbach, holding a certificate of stock as trustee, to obtain new certificates issued in the name of his friend, Wilkins, and thereby to transfer the certificates to an innocent purchaser for value. A new certificate of stock was issued to Wilkins, who subsequently sold and trans-

ferred it. The court found that Wilkins "acted throughout as the friend and agent of Wurzbach in the sale of the stock, with no benefit or profit to himself." This court held Wilkins equally liable with the corporation to the complainants "for his participation in the wrongful sale of the stock," although holding as between him and the corporation, the latter was primarily bound. This case is cited in Amercian & English Encyclopaedia of Law as authority for the proposition that "in an action against the agent for fraud the fact that he derived no personal profit or benefit therefrom is immaterial." Volume 1, p. 1136.

To the same effect as the text of Meacham on Agency (2 Ed.), sec. 1458, and of Corpus Juris, vol. 27, pages 13-14.

We think it needs no elaboration to demonstrate that the conduct of the defendants described in the bill was a breach of the principles of integrity and fair dealing between men, amounting to positive fraud, to redress which a court of equity should lend its aid. The defendants could hardly expect the complainants to accept their statement that the original misrepresentation as to the title, made at the time of the auction, was in good faith made in the brief that the Lamberts would retire the outstanding encumbrance with the proceeds of the sale, when they subsequently stood by and permitted the complainants to pay the original payment and the deferred payments, even assisting the Lamberts in the collection, without disclosing to complainants the true *status* of the title, and that their representation to them was untrue.

The demurrer to the bill should have been overruled. The decree will be reversed and the cause remanded for answer.

The defendants will pay the costs of the appeal.