Dallas JOHNSON and wife Gladys Johnson, Appellants,

v.

Iva HAYNES, Appellee.

Court of Appeals of Tennessee, Western Section.

Sept. 12, 1975.

Certiorari Denied by Supreme Court Dec. 30, 1975.

Thomas Privette, Jr., Knoxville, for appellants.

Joel H. Anderson, Jr., Knoxville, for appellee.

MATHERNE, Judge.

The plaintiffs-buyers sue for specific performance of the sale of land at auction. The defendant-owner relies upon the statute of frauds and the failure of the buyers to comply with the terms of the sale.

The chancellor held the sale not enforceable because the requirements of the statute of frauds were not met, and he also held the buyers failed to meet the terms of the sale. The plaintiffs appeal assigning both findings of the chancellor as error.

I.

By written contract dated June 14, 1973, signed by the seller, the seller did place with the auctioneer, Zirkle-Rainwater Auction Co., a tract of land lying in the 15th Civil District of Knox County, Tennessee "described and bounded as follows: Being 25 A. more or less, located on old Sevierville Pike," to be sold by the auctioneer "at the highest price bid when put up at Public Auction by the party of the second part (auctioneer) and all sales under this contract are to be confirmed by First party (seller)." The seller represented she had legal right and full power to convey the property to the purchasers, and she did "agree to make good and sufficient Warranty Deeds to all lands, parcels, or lots sold under this contract." The contract does not state the terms for payment of the land sold thereunder.

The auctioneer prepared printed posters advertising the sale to be held Saturday, September 22, at 2:30 P.M. The poster gave the location of the property which was stated to contain 17.42 acres. The poster provided "Terms Announced at Sale," and concluded with "Sale conducted for owners by: Zirkle-Rainwater Auction Company." On the reverse side of the poster a plat of the property was pictured, showing the property divided into four lots. The poster stated the property, "Will be offered in tracts and as a whole."

The defendant-seller testified she was well acquainted with the poster, and she had several copies in her possession at the time. The defendant-seller further testified she attended the auction. The poster did not state all sales would be subject to confirmation by the seller. The defendant-seller did not at the auction require that statement be made, and it was not made, to the potential bidders.

The auctioneer, immediately prior to calling the sale, announced the terms of payment were 10% down at time of sale. Further terms announced were: 23⅓% to be paid with delivery of deed, the balance over one and two years equally at 8½% simple interest; *or cash.* The auctioneer testified the credit terms were not mandatory, but were offered with the idea of thereby inducing more people to bid. The auctioneer testified he made no statement concerning a right reserved in the seller to confirm any bid.

The sale was opened and the plaintiffs bid on certain individual lots and ultimately did submit the last, highest, and best bid for all four lots at the one figure of $27,925.00, which resulted in the auctioneer knocking the entire parcel off to the plaintiffs at that figure. The auctioneer kept a record of all bids on a bid sheet printed for that purpose, which bid sheet is filed as Exhibit 2 in the record. This bid sheet shows the plaintiff to be the purchaser at the auction.

The daughter of the plaintiff gave to the bookkeeper of the auctioneer her check in the amount $3,000 payable to the auctioneer. The bookkeeper was requested to temporarily hold the check for the apparent reason money would have to be transferred by the plaintiff from a savings account. The check was accepted by the auctioneer as the 10% down payment. After this controversy arose the auctioneer tendered the

check back to the plaintiffs, but it was refused. The check was never presented to the bank upon which it was drawn.

The plaintiff testified he, his wife, and daughter were talking with two representatives of the auctioneer immediately after the sale, and he was asked how he wanted to pay for the land. The plaintiff testified—

"A. Well, my wife said, 'Let's pay half now and half a year from now,' and I said 'No, let's pay it all cash.' He (auctioneer's representative) said, 'Well, how do you want it,' and I said, 'Just put it down cash.' That is Mr. Rainwater's two representatives. I said, 'Just put it down cash.' "

The plaintiff is corroborated in this respect by the testimony of his wife and daughter. The representatives of the auctioneer did not testify, nor is it shown who they were.

The defendant testified that immediately after the auction sale Mr. Zirkle and Mr. Rainwater came to her and gave her a copy of the bid sheet and stated the entire property had been sold for $27,925.00, one half cash and one-half due in one year at 8½% interest. The defendant told them she was satisfied with the sale on those terms. Mr. Rainwater testified, but he was not asked about that conversation with the defendant.

■ It is to be noted the bid sheet kept by the auctioneer had an entry "½ cash" in handwriting at the lower left side of the sheet. It is not established who made that entry on the bid sheet. Mr. Rainwater testified it was his understanding, as he was told by his bookkeeper, that the plaintiffs, immediately after the sale, told the auctioneer's bookkeeper they wanted to pay "one-half cash and the balance in a year" and later changed their minds and wanted to pay cash. The bookkeeper was not called to testify. The plaintiff, his wife, and daughter testify the plaintiff offered cash. We cannot accept this hearsay testimony of the auctioneer as to what his bookkeeper said the plaintiff said on the issue of terms of

payment. If the defendant-seller was misled by the entry "½ cash" on the bid sheet, she was misled by her agent in the matter. The defendant-owner will not be heard to argue, under this record, that the entry "½ cash" proves the plaintiff-buyer failed to comply with the terms of the sale.

Mr. Rainwater testified he was in charge of the auction and about seven or eight other people from his company were there. He confirmed the auctioneer accepted the plaintiffs' bid of $27,925.00 for the entire tract. Rainwater was asked about an unexecuted warranty deed filed as Exhibit 6 in the record which revealed a sale of the land for $27,925.00, one-half cash in hand paid and the other one-half due in one year. Rainwater stated that paper did not reflect the terms under which the land was sold.

There was some correspondence between attorneys for the parties, until on about December 6, 1973, the defendant's attorney wrote the plaintiffs' attorney to the effect a reasonable time had passed and the plaintiffs had failed to comply with the terms of the sale by paying one-half cash and one-half in one year at 8½% interest, and the defendant was therefore "unwilling to sell or transfer to the Johnsons under any conditions."

According to the record the plaintiffs were willing to pay cash throughout the time, and they do now tender $27,925.00 as payment due under the contract of sale.

## II.

We hold, upon the fall of the hammer, there was a valid contract of sale of the land to the plaintiffs for the sum of $27,925.00, cash. Under the record, we disagree with the chancellor that the plaintiffs failed to meet the terms of the sale.

■ An auctioneer employed to sell land at public auction is primarily the agent of the seller. In making the sale, the evidence of which a writing signed by the party to be charged is necessary, the auc-

tioneer is also treated as the agent of the purchaser for the purpose of making the written evidence at the time of the sale, but his authority to represent the purchaser is thus limited. *Green v. Crye* (1928) 158 Tenn. 109, 11 S.W.2d 869.

■ We therefore conclude the auctioneer had no authority to change the terms of the sale from that as announced at the sale to terms of one-half cash and one-half in one year at 8½% interest. If the auctioneer did tell the defendant-seller those were the terms of the sale, that statement did not bind the buyer because the buyer elected to pay cash as announced at the sale. There is no showing by any credible evidence that the buyer authorized the auctioneer to change the terms of the sale, after the hammer fell.

■ The defendant cannot, under the facts, rely upon the provision of the contract she signed with the auctioneer which gave her the right to confirm or reject bids. Where the terms announced at the auction sale include the right in the owner to reject bids, that condition is binding on all bidders, whether they heard it or not. *Moore v. Berry* (1955) 40 Tenn.App. 1, 288 S.W.2d 465. We hold, however, where the right to reject bids is not stated in the printed posters, nor is it announced at the sale, that right cannot be asserted after the bid is accepted by the fall of the hammer or other act of acceptance by the auctioneer.

■ The defendant-seller knew the right to reject bids was not in the printed material advertising the auction; she knew the right to reject was not announced at the sale. It would be extremely inequitable to permit the seller to thus keep secret her right to reject a bid which had been accepted by the auctioneer, and to thereby void an otherwise completed sale.

### III.

Having determined a contract for the sale of land existed, the question is whether that contract is rendered unenforceable by the statute of frauds, T.C.A. § 23–201(4). That statute provides:

"23–201. *Writing required for action.* —No action shall be brought:

(1) . . .

(4) Upon any contract for the sale of lands, . . . Unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized."

The purpose of the statute has been stated to be to protect owners of land from hasty or inconsiderate agreements in respect to the most valuable species of property, and to guard against misunderstandings as to the nature and extent of the agreement. *Whitby v. Whitby* (1857) 36 Tenn. 473; *Ashley v. Preston* (Tenn.1931) 162 Tenn. 540, 39 S.W.2d 279. The purpose of the statute is to prevent fraudulent contracts from being proved by perjured testimony. *Yates v. Skaggs* (1948) 187 Tenn. 149, 213 S.W.2d 41.

■ In order to satisfy the statute the memorandum must contain the essential terms of the contract expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers or with which it is connected without resort to parol evidence. *Lambert v. Home Federal Savings & Loan Assn.* (Tenn.1972) 481 S.W.2d 770. The statute is satisfied by a group of writings as well as a single writing and all the writings need not be signed by the party to be charged if there is sufficient reference therein to establish the necessary connection. *Yates v. Skaggs, supra.*

■ The writings to be here considered are: (1) the contract between the seller and the auctioneer; (2) the posters advertising the sale; (3) the bid sheet kept by the auctioneer. The only paper signed by the

seller is the contract she entered into with the auctioneer.

The auctioneer contract signed by the seller expressly states the seller will give a good warranty deed "to all lands, parcels or lots sold under this contract." The description of the land as contained in the auctioneer's contract might be insufficient to satisfy the statute. That insufficiency, if any, was corrected by the printed posters which contained a survey plat of the entire property and each lot thereof with course and distance calls for each lot. The posters provided "Sale Conducted for Owners By: Zirkle & Rainwater Auction Company." That statement implies there was an agreement of some nature between the owner and the auctioneer. The statement relates back to the written contract dated June 14, 1973, between the owner and the auctioneer, signed by the owner. The auctioneer bid sheet shows the highest, best, and last bid on the land sold as advertised by the auctioneer under its contract with the owner was the bid of the plaintiff. We hold the instruments noted, taken together, serve to satisfy the statute. Upon the fall of the hammer there was a sale to the plaintiff evidenced by a memorandum in writing signed by the party to be charged.

Parol proof is admissible to show the terms of the sale because the writing evidencing the sale (poster) provided "Terms announced at sale." It is not necessary that the consideration be set out in the writing. *Hughes v. Herbert* (1929) 159 Tenn. 187, 17 S.W.2d 16. There was some difference between the parties about the total consideration as reflected on the bid sheet, but that was settled to be $27,925.00.

We note there is really no argument here on the issue of the sale. The seller, after the sale, decided to ask for interest on one-half the purchase price for one year. The buyer insists on paying cash as it was announced he could do.

We conclude the sale as handled meets all requirements of the statute of frauds, and the contract is enforceable against the seller.

It results the decree of the chancellor is reversed and a decree will be entered in this Court ordering specific performance of the sale of the land, upon the payment to the seller of the sum of $27,925.00. This cause is remanded to the Chancery Court of Knox County, Tennessee, for such further orders as may be necessary in order to effect the specific performance as herein ordered. The costs in the Chancery Court and in this Court are adjudged against the defendant-appellee.

CARNEY, P. J., and PARROTT, J., concur.