# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### July 9, 2003 Session

## BOBBY CUNNINGHAM v. TERRY LESTER, ET AL.

**Direct Appeal from the Chancery Court for Bedford County**
**No. 23,125     J. B. Cox, Chancellor**

_____

**No. M2002-00887-COA-R3-CV - Filed August 20, 2003**

_____

This dispute arises from an auction sale of real property. The trial court awarded plaintiff buyer specific performance of one contract and denied specific performance of a second contract. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

John H. Norton, III, for the appellant, Bobby Cunningham.

Ralph McBride, Jr., for the appellees, Terry Lester and wife, Gayla Lester.

### OPINION

The facts relevant to this appeal are not in dispute. Terry Lester (Mr. Lester) and Gayla Lester (Mrs. Lester; collectively, "Lesters") owned real property in Bedford County as tenants by the entirety. In February 2000, Lesters executed a contract with Bob Parks Auction Company ("BPAC") for sale by auction of several parcels of land. Pursuant to the contract, an auction was scheduled for April 2000, and an advertising brochure was published and disseminated. The auction was conducted as scheduled. Prior to the commencement of bidding, John Higgins (Mr. Higgins), the principal auctioneer, announced that the land was offered "with reserve," with confirmation of the final bids to be made by Lesters. Lesters were present at the auction. This dispute concerns tracts three, four and five of the auctioned land.

Appellant, Bobby Cunningham (Mr. Cunningham) was the successful bidder at auction on tracts four and five of the property. A contract for sale of these tracts was executed and signed by Mr. Cunningham, Mr. Lester, and Mr. Higgins on behalf of BPAC. Mr. Cunningham also entered into an agreement with Keith Neal (Mr. Neal), the highest bidder on tract three, by

which Mr. Cunningham took over Mr. Neal's bid. A contract for sale of tract three was signed by Mr. Cunningham and Mr. Lester, but not by Mrs. Lester or Mr. Higgins. As required by the contracts for sale, Mr. Cunningham paid earnest money of $11,602.27, ten percent of the sale price, to Mr. Higgins. The contracts anticipated a closing date of thirty days from the date of auction.

Prior to the date of closing, Mr. Higgins informed Mr. Cunningham that Lesters would not close on the sale. Mr. Cunningham filed a complaint for specific performance and restraining order on May 25, 2000, asserting that he was ready and able to close on the property. Lesters raised the statute of frauds as an affirmative defense, contending that the contracts were unenforceable as they had not been signed by Mrs. Lester. The trial court awarded specific performance on the contract for sale of tracts four and five, which had been signed by Mr. Lester and Mr. Higgins as an agent for Mrs. Lester. The trial court denied specific performance of the contract for sale of tract three, which had not been signed by Mrs. Lester or her agent. Mr. Cunningham now appeals this determination.

### Issue Presented

As we perceive it, the issue presented for review by this Court is whether, under the statute of frauds applicable to contracts for sale of real property, the trial court erred by denying specific performance of the contract for sale of tract three.

### Standard of Review

The issue before this Court is an issue of law. Our review of issues of law is *de novo*, with no presumption of correctness attached to the determinations of the trial court. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000).

### Analysis

We begin our analysis with the proposition that auction sales of real property are within the provisions of the statute of frauds. 7 Am. Jur. 2d *Auctions and Auctioneers* § 37 (1997); *see, e.g.*, *Johnson v. Hayes*, 532 S.W.2d 561 (Tenn. Ct. App. 1975)(perm. app. denied). Thus contracts for the sale of land by auction are not enforceable absent a signed writing memorializing the sale. *Id.* An auctioneer may sign a contract for the sale of land when authorized by the owner. *Id.* §§ 39-40. Where the owner reserves the right to refuse a bid and the auctioneer has stated that the sale is subject to confirmation by the owner, there is no binding sale until the owner accepts the bid. *See, e.g., Moore v Berry*, 288 S.W.2d 465 (Tenn. Ct. App. 1955)(perm. app. denied). The statute of frauds provides, in pertinent part,

> [n]o action shall be brought ... [u]pon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year ... unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and

signed by the party to be charged therewith, or some other person lawfully authorized by such party."

Tenn. Code Ann. § 29-2-101(a)(2000).

The purpose of the statute is to protect against unconsidered agreements regarding the sale of real property. *Johnson v. Haynes*, 532 S.W.2d at 565. The requirement that such agreements be in writing and signed by the person to be charged seeks to avoid misunderstandings about their terms and nature. *Id.* Historically, the courts of this State have held that, although form is immaterial, to be enforceable under the statute of frauds a signed writing must express the essential terms of the agreement with a degree of certainty such that the agreement of the parties can be determined without recourse to parol evidence. *See, e.g., Hudson v. King*, 49 Tenn. 560 (Tenn. 1870); *Johnson v. Haynes*, 532 S.W.2d at 565.

Mr. Cunningham contends that the trial court erred by distinguishing between the contract for the sale of tracts four and five ("Contract A") and the contract for the sale of tract three ("Contract B") "merely" because Contract A was signed by Mr.Lester and Mr. Higgins, as agent for Mrs. Lester, while Contract B was not signed by Mrs. Lester or her agent. He further asserts that the contract between Lesters and BPAC, which was signed by Mr. Lester and Mrs. Lester, is sufficient to satisfy the statute of frauds. Finally, Mr. Cunningham submits that Mrs. Lester orally acknowledged the sale of tract three, and that her refusal to sell is not an exercise of her right to reserve but an attempt to rescind the contract.

We first address Mr. Cunningham's assertion that Contract A is not distinguishable from Contract B "merely" because Contract A was signed by Mrs. Lester's agent, while Contract B was not. Mr. Cunningham cites *Johnson v. Hayes* for the proposition that the sale was complete upon the "fall of the hammer." In *Johnson*, this Court held that an auction sale of land was valid and complete at the fall of the hammer where 1) there was a valid contract between the owner and the auction company; 2) the auctioneer did not announce the owner's right to reserve, owner's right to reserve was not in the printed advertising material, owner was present at the auction and knew her right to reserve had not been announced; and 3) the description of the land in the auctioneer's contract, together with that in the printed posters, was sufficient to satisfy the statute of frauds. *Johnson v. Haynes*, 532 S.W.2d 561, 564-66 (Tenn. Ct. App. 1975). We also noted that an auctioneer is basically an agent of the owner, and that when a right to reject is not announced at the auction or stated in the printed materials it cannot be asserted after the bid is accepted. *Id.* at 565. In the case now before us, it is precisely because Mr. Higgins, the auctioneer, signed the contract as an agent of Mrs. Lester that Contract A is enforceable.[1] Contract A is a signed contract for the sale of land which, together with the description of property contained in the advertising materials and the signed contract between Lesters and BPAC, satisfies the statute of frauds. The validity of Contract A, moreover, has not been raised as an issue on appeal.

---

[1]Neither party has raised the issue of whether Mr. Higgins had authority to execute the contract as Mrs. Lester's agent. We accordingly do not address it here.

Contract B, on the other hand, was signed neither by Mrs. Lester nor her agent, Mr. Higgins. Thus we next consider Mr. Cunningham's assertion that, under *Johnson v. Haynes*, the contract for sale at auction between BPAC and the Lesters is sufficient to satisfy the statute of frauds. We again observe that in *Johnson* there was neither announcement nor notice that owner reserved the right of refusal and bids were subject to confirmation by owner. *Id*. at 563. The *Johnson* Court accordingly treated the auction as one without reserve. Thus the auctioneer in *Johnson*, acting as an agent for the owner, accepted the highest bid when the hammer fell. *Id*. at 564. Having determined a contract for sale existed, the *Johnson* Court next considered whether the contract was enforceable under the statute of frauds. *Id*. at 565. The court determined that the signed contract between the seller and the auctioneer, the posters advertising the sale, and the bid sheet kept by the auctioneer together constituted a writing sufficient to satisfy the statute of frauds. *Id*. at 566.

The record before us includes a signed contract between Lesters and BPAC to sell at auction Lesters' real and personal property. It also contains an advertising brochure describing the real property to be sold. However, Mr. Higgins announced at the auction that the property was offered with reserve, and that bids would be subject to confirmation by Lesters. Thus Mr. Cunningham's bid was an offer to purchase subject to Lesters' confirmation or refusal. *See Moore v. Berry*, 288 S.W.2d 465, 468 (Tenn. Ct. App. 1955). In *Moore v. Berry*, this Court noted that where the right to reject has been reserved, to hold that the fall of the hammer constitutes a final sale absent confirmation by the owner would render the announced conditions of the auction meaningless. *Id.* at 468. The conditions of a sale at auction which are announced at the auction are binding on the bidder. *Id.* Accordingly, in the present case, there was no acceptance of Mr. Cunningham's bid until it was confirmed by Mr. Lester and Mrs. Lester, or their agent. Mr. Cunningham contends that Mrs. Lester orally accepted his offer, and that her refusal amounts to an effort to rescind the contract. This argument must fail under the statute of frauds. As Mr. Cunningham asserts, the statute of frauds may be satisfied by a group of writings which, although not all signed by the person to be charged, together express with certainty the essential terms of the contract. *See, e.g., Johnson v. Haynes*, 532 S.W.2d at 565. However, the court must be able to determine these essential elements without resort to parol evidence. *Id.* The writings in evidence in this case, the signed contract between Lesters and BPAC and the advertising brochure describing the property and announcing the auction, reflect no agreement by Mrs. Lester to confirm Mr. Cunningham's bid. We cannot determine acceptance of Mr. Cunningham's offer to purchase without resort to parol evidence which, in this case, is ambiguous at best. The contract for the sale of tract three is unenforceable under the statute of frauds.

In light of the foregoing, we affirm the judgment of the trial court refusing specific performance of the contract for sale of tract three.[2]  Costs of this appeal are taxed to the appellant, Bobby Cunningham, and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

_____

[2]Lesters raise the additional issue of whether the sale of tract 3 should be barred by the doctrine of unclean hands.  In light of our holding in this opinion, it is unnecessary to address this issue.