IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 13, 2005 Session

# IN RE: ESTATE OF MILLER S. PRICE, DECEASED, GREENE COUNTY BANK, v. MARK F. PRICE

**Direct Appeal from the Probate Court for Hamblen County**
**No. 18-266      Hon. Herbert M. Bacon, Judge**

**No. E2004-02670-COA-R3-CV  - FILED NOVEMBER 28, 2005**

Deceased had executed loan guaranties to claimant.  Claimant filed claim in Estate based on the guaranties.  The Estate excepted on the grounds that the underlying loans were not due and payable because claimant had not accelerated the indebtednesses.  The Trial Court upheld the claims.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Probate Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR. J., joined.

Mark A. Cowan, Morristown, Tennessee, for appellant.

Kenneth Clark Hood, Greeneville, Tennessee, for appellee.

## OPINION

In this action, the Trial Court sustained the claim of Greene County Bank ("GCB"), against the estate of Miller S. Price.  The Executor of the Estate, Mark F. Price, has appealed.

### The Evidence

Miller S. Price died on January 10, 2004, and GCB filed three claims against the Estate on February 18, 2004.  All of the claims stated that they were currently due, and were based

on three guaranties (the "Guaranties") signed by the Deceased.

The 1999 Guaranty and the 2001 Guaranty employed identical language. The most relevant language is as follows:

. . . [T]he Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows . . . .

1. **No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.**

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. . . . **The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth**.

3. **If the Undersigned shall . . . die, . . . then the Lender shall have the right to declare immediately due and payable, and the Undersigned will forthwith pay to the Lender, the full amount of all Indebtedness, whether due and payable or unmatured**. . . .

. . .

6. . . . Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): . . . (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any . . . indulgence granted to Borrower, any delay or lack of

diligence in the enforcement of Indebtedness . . . .

. . .

11. . . . **Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.**

(emphasis added).

The Deceased signed the third guaranty on June 7, 2002 to induce GCB to make a loan to Ovalformer LLC, a North Carolina LLC. This guaranty formed the basis for a claim filed against the Estate in the amount of $801,081.95. Relevant language of the 2002 Guaranty is as follows:

> . . . **[T]he undersigned Miller Price . . . hereby jointly and severally . . . for themselves, their heirs, executors, administrators and successors absolutely and unconditionally guarantee(s) the full and prompt payment to the Bank [GCB], at maturity (whether by acceleration or otherwise)** and at all times thereafter, of any and all indebtedness, obligations and liabilities of every kind and nature, however created, arising or evidenced, of the Debtor [Ovalformer, LLC] to the Bank . . . together with all expenses, legal and/or otherwise (including court costs and attorney's fees) incurred by the Bank in collecting or endeavoring to collect such indebtedness . . . .

(emphasis added).

> THIS GUARANTY SHALL BE A CONTINUING, ABSOLUTE AND UNCONDITIONAL GUARANTY, and shall remain in full force and effect until the Indebtedness (and interest thereon and expenses in connection therewith), and all renewals, modifications, or extensions thereof, in whole or in part, shall have been fully paid and satisfied . . . . **The death . . . of the Guarantor . . . shall not terminate this Guaranty until notice of any such death . . . shall have actually been received by the Bank, and until all of the said Indebtedness, or any extensions or renewals thereof, existing before receipt of such notice shall be fully paid**.

(emphasis added).

> The Banks is hereby expressly authorized to make from time to time, without notice to anyone: any renewals, modifications or extensions, whether such renewals, modifications or extensions be in whole or in part and without limit as to the number

of such extensions or of the renewal periods thereof, and without notice to or further assent from the undersigned . . . and the liability of the Guarantor . . . shall not be in any manner affected, diminished or impaired thereby, or by any lack of diligence, failure, neglect or omission on the part of the Bank to make any demand or protest, or give any notice of dishonor or default, or to realize upon or protect any of said Indebtedness . . . . **The Bank . . . shall be under no obligation, at any time, to first resort to, make demand on, file a claim against, or exhaust its remedies against the Debtor, . . . or other persons or corporations, their properties or estates, or to resort to or exhaust its remedies against, any collateral, security, . . .or other rights whatsoever. It is expressly agreed that the Bank may at any time make demand for payment on, or bring suit against the Guarantor . . . .**

(emphasis added).

Additional terms governing the 2002 Guaranty are set forth in the underlying loan agreement, which was signed by the Deceased as guarantor. These provisions state that the death of a guarantor is an event of default. The loan agreement further provides that "[u]pon the occurrence of any Event of Default . . . the Bank may, at its option, declare the entire unpaid principal balance of the Note, all interest accrued and unpaid thereon and all other amounts payable under this Loan Agreement to be immediately due and payable for all purposes . . . ."

Mark F. Price (the "Executor"), duly filed exceptions to these claims.

At the hearing on the exceptions, the parties stipulated that the Ovalformer loan went into default on January 29, 2004, the Price Family Limited Partnership loan went into default on January 25, 2004, and the MED loan was current at the time of the hearing. The parties further stipulated that GCB extended the Ovalformer loan on March 4, 2004 and again on May 28, 2004.

At the hearing, a Senior Vice President for GCB testified that the bank's usual procedure for accelerating a loan is to "give notice by form of a letter, that we intend to accelerate, and then we turn it over to counsel." Regarding how many days the bank usually gives a borrower to bring its balance current, the witness testified, "That can be dependent upon what the language of the notes has, of course. Some notes have different time limits. But, as a general rule, we give seven to ten days." The witness testified that the first letter, requesting that the borrower bring its balance current, was sent to Ovalformer, LLC and the Price Family Limited Partnership in December 2003, and that around August 4, 2004, the Price Family Limited Partnership was sent a demand letter stating that its loan had been accelerated. The witness testified, however, that the bank sends such notices only as a courtesy to its customers, not because the bank believes it is necessarily required to do so.

Regarding the Ovalformer loan, the witness testified that after the bank requested that the borrower bring its balance current, the bank and Ovalformer, LLC entered into an agreement, on March 4, 2004, agreeing that Ovalformer, LLC had until April 28, 2004 to bring its balance current.

After the agreement, the bank and Ovalformer, LLC entered into a second agreement on May 28, 2004, which gave Ovalformer, LLC until August 26, 2004 to bring its balance current.

Following the hearings on the claims, the Trial Court stated, regarding the 1999 and 2001 Guaranties:

Under the provisions of both these guaranties [GCB] was not required to accelerate either of the loans in order for liability to attach to the guarantor. Upon the death of the guarantor [GCB] had an immediate right of payment against the estate simply by filing its claim and making a demand for payment in full.

As to the 2002 Guaranty, the Court stated "[t]he only thing required of the lender was to file a timely claim in the Probate Court making demand for payment of said loan in full, and this [GCB] complied with." The Executor of the Estate has appealed to this Court, and we restate the issues raised on appeal, thusly:

1. Whether the 1999 Guaranty is void for vagueness.

2. Whether the Probate Court erred in overruling the Executor's exceptions to the claims filed by Green County Bank.

The Supreme Court has described the standard of review in probate cases such as this as:

This case was tried in the probate court without a jury. Accordingly, the standard of review is *de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise. . . . Questions of law are reviewed *de novo* with no presumption of correctness.

*Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citations omitted).

As to the 1999 Guaranty signed by Guarantor to induce GCB to make a loan to Price Family Limited Partnership, the Executor argues:

In this guarantee, the debt to be guaranteed is never described. Consequently, it can't be enforced and is void for vagueness. To be valid, a guaranty must contain all the material facts on its face. If it doesn't, it will be void under the statute of frauds, and can't be aided by parol evidence.

The Executor's exception to the 1999 guaranty did not argue that the 1999 guaranty was void for vagueness under the Statute of Frauds, but did make this argument during the Probate Court's August 30, 2004 hearing. Afterwards, GCB had the opportunity to rebut, and stated:

It is true that on the [2001 Guaranty], there was a box checked that says this relates

-5-

to a specific note. And then you'll notice down under paragraph four it says that there is no limit on the liability in that particular guarantee. On the [1999 Guaranty], no box was checked, but down [under paragraph four] it says the liability of the undersigned shall be limited to a principal amount of a million seven hundred thousand. So [the 1999 Guaranty] says your're guaranteeing debts up to a million seven. [The 2001 Guaranty] says we're guaranteeing whatever the indebtedness is on promissory note dated December 20th, 1998 for two hundred and eighty thousand dollars. You know, perhaps it would've been nice for one of those boxes [on the 1999 Guaranty] to have been checked, but it's clear that there's a limitation of debt of a million seven hundred thousand, and Miller Price signed that. So I think it would be a travesty for them to be able to escape the responsibility of Miller Price based upon that technicality.

The foregoing demonstrates that GCB had fair notice of the void for vagueness defense and an opportunity to rebut it. Thus, the Executor did not waive this issue. *See Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995).

Guaranty agreements fall under the statute of frauds. Tenn. Code Ann. § 29-2-101(a)(2) (2005). "[T]o be enforceable under the statute of frauds a signed writing must express the essential terms of the agreement with a degree of certainty such that the agreement of the parties can be determined without recourse to parol evidence." *Cunningham v. Lester*, 138 S.W.3d 877, 880 (Tenn. Ct. App. 2003). The statute of frauds, however, may be satisfied by multiple writings if (1) the party to be charged signed at least one of them, (2) the court can determine from the face of the writings that they are related, and (3) the court can determine with certainty the essential terms of the contract without the use of parol evidence. *Id.* at 881; *Brandel v. Moore Mortgage & Inv. Co.*, 774 S.W.2d 600, 605 (Tenn. Ct. App. 1989). *Also see, Williams v. Buntin*, 4 Tenn. App. 340, 1927 WL 2073, at *6 (Tenn. Ct. App. 1927). Their connection will be implied where the writings "relate to the same parties, subject-matter and transaction." *Id.*

The 1999 Guaranty includes two optional paragraphs which provide alternate descriptions of the guaranty's extent. If paragraph A is checked, the guaranty applies only to a specific debt, and if paragraph B is checked, the guaranty applies to all obligations owed by the borrower to the lender. Neither of these options is checked in the Guaranty. The Guaranty does clearly state that its purpose is to induce GCB to loan funds to the Price Family Limited Partnership. It also provides that "[t]he liability of the Undersigned hereunder shall be limited to a principal amount of $1,700,000.00 . . . plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto." The 1999 Guaranty is dated May 27, 1999 and is signed by the Deceased. Yet, the face of the Guaranty does not specifically identify what debt is guaranteed.

The record, however, includes a loan document which appears on its face to be related to the 1999 Guaranty. In this loan document, the borrower is the Price Family Limited Partnership and the lender is GCB. The loan document is dated May 27, 1999, and the principal amount of the loan is $1,700,000.00. In addition, the Price Family Limited Partnership signed this

document through its general manager, Miller Price. This loan document and the 1999 Guaranty have identical parties, an identical principal amount, and they were executed on the same day. Thus, the documents are clearly related, and considering these two documents together leads to the conclusion that the purpose of the 1999 Guaranty was to guarantee this specific loan agreement. Accordingly, these documents provide the essential terms of the contract with sufficient certainty to satisfy the statute of frauds.

The Executor argues that the guaranties gave GCB the right to accelerate the respective notes and collect the full amounts of the guaranty from the guarantor, but that GCB failed to exercise these rights prior to the expiration of the claims period.

The extent of the guarantor's liability is determined from the individual guaranties and their respective underlying loan agreements. *Galleria Assoc., L.P. v. Mogk*, 34 S.W.3d 874, 876 (Tenn. Ct. App. 2000); *see also Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 804-05 (Tenn. 1975). "Contracts of guaranty are to be construed according to the ordinary meaning of the wordage used and with the view to carry out the intent as therein expressed." *First Nat'l Bank v. Foster,* 451 S.W.2d 434, 436 (Tenn. Ct. App. 1969); "In order to facilitate the extension of credit, Tennessee does not favor guarantors and will construe a guaranty against the guarantor as strongly as the language will permit." *Suntrust Bank v. Dorrough*, 59 S.W.3d 153, 156 (Tenn. Ct. App. 2001).

The 1999 and 2001 Guaranties share the same contractual language and describe the liability of the guarantor as follows:

> . . . [T]he **Undersigned** hereby **absolutely and unconditionally guarantees** to Lender the full and **prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise**

> 1. **No act or thing need occur to establish the liability of the Undersigned** hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder.

> 2. **This is an absolute, unconditional and continuing guaranty of payment** of the Indebtedness and shall continue to be in force and be binding upon the Undersigned

> . . .

> 11. . . . **Lender shall not be required first to resort for payment of the Indebtedness to Borrower** or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

(emphasis added). The foregoing language establishes that the Guaranties are absolute, guaranteeing the payment of their underlying obligations when those obligations become due. The liability is contingent only upon default by the principal debtor. The 2002 Guaranty is also clearly an absolute guaranty from the following language:

> . . . **[T]he undersigned** Miller Price . . . hereby jointly and severally . . . for themselves, their heirs, executors, administrators and successors **absolutely and unconditionally guarantee(s) the full and prompt payment** to the Bank [GCB], **at maturity (whether by acceleration or otherwise)**
>
> . . .
>
> . . . **The Bank . . . shall be under no obligation, at any time, to first resort to, make demand on, file a claim against, or exhaust its remedies against the Debtor**, . . . or other persons or corporations, their properties or estates, or to resort to or exhaust its remedies against, any collateral, security, . . .or other rights whatsoever. **It is expressly agreed that the Bank may at any time make demand for payment on, or bring suit against the Guarantor** . . . .

(emphasis added). The result of this language is the same as that in the 1999 and 2001 Guaranties. Thus, the guarantor's liability under one of the Guaranties becomes due and payable when the underlying obligation comes due and the principal debtor defaults.

In the loan agreements underlying all three Guaranties, there are acceleration clauses that give GCB the right to accelerate a loan if an instalment on that loan is not paid. Thus, one event giving GCB an immediate right to payment against the guarantor for the entire balance of a loan would be default by the principal debtor followed by GCB's exercise of its acceleration rights.

In addition to default by the borrower, the death of the guarantor makes the guarantor's liability due and payable. Each of the three guaranties at issue include an acceleration clause that gives the lender the option of accelerating the balance of the underlying debt in the event of the guarantor's death. While the 2002 Guaranty does not include such a provision and in the guaranty agreement itself, the provision of the underlying loan agreement does, and this agreement was signed by the deceased guarantor. Thus, the guarantor's liability under the Guaranties would become due and payable, not only if the underlying loans became due and the principal debtors defaulted, but also if GCB exercised these acceleration rights arising from the guarantor's death.

The Estate succeeded to the role of guarantor of the underlying obligation upon the deceased's death. *See, In re: Estate of Darwin*, 503 S.W.2d 511, 514 (Tenn. 1973); *Wright v. Universal Tire, Inc.,* 577 S.W.2d 194, 196 (Tenn. Ct. App. 1978).

The principal argument by the Executor in this case is that the claims were improper because they were not yet due and payable when filed. He further argues that the claims are now barred because GCB failed to exercise its acceleration rights prior to the expiration of the claim

period on May 16, 2004. However, regardless of when GCB exercised its acceleration rights, the claims are valid. If filing the claims constituted acceleration of the underlying liabilities, the claims would be for matured liabilities of the Estate. If filing the claims did not constitute acceleration, the claims would be for unmatured contingent liabilities of the Estate.

Claims for both matured and unmatured claims must be filed against an estate within four months from the date that the notice required by Tenn. Code Ann. § 30-2-306(c) is first published. Tenn. Code Ann. §§ 30-2-307(a)(1), 30-2-306(c). This includes claims for contingent liabilities as well. *See* Tenn. Code Ann. § 30-2-307(a)(1) (stating that "all claims" must be filed within the four month period as described in Tenn. Code Ann. § 30-2-306(c)); *See, In re Estate of Minton*, 625 S.W.2d 260, 262 (Tenn. 1981). When unmatured claims have been filed "[t]he personal representative shall hold aside sufficient funds or other assets to pay each . . . unmatured claim . . . with interest (if the claim be one bearing interest), . . . until such unmatured claim has reached maturity." Tenn. Code Ann. § 30-2-317(d) (2005). When acceleration or some other event causes a claim to mature, even if this occurred after the claims period, the Estate is required to pay the claim using the reserved funds. Therefore, regardless of whether GCB's claims were immediately due and payable when they were filed, they are valid. The issue is not whether the Estate is liable under the Guaranties, but whether the liability is matured and currently due and payable. The issue thus becomes whether GCB has an immediate right to payment under the Guaranties.

GCB acquired the right to accelerate the maturities of the obligations underlying all three Guaranties when the Deceased died on January 10, 2004, as acceleration clauses are "enforced according to their terms." *Lively v. Drake*, 629 S.W.2d 900, 902 (Tenn. 1982). Under the terms of all of the acceleration clauses in the Guaranties and their underlying loan agreements, none of the acceleration clauses is automatic. Unless the terms of the guaranty states otherwise, there is no rule requiring the holder of an indebtedness to notify the debtor of his intention to exercise his acceleration right before he actually exercises that right. *See Lively*, 629 S.W.2d at 903. The acceleration clauses present in the Guaranties and their underlying loan agreements do not expressly require GCB to give prior notice to the guarantor or the principal debtor of its intention to accelerate the underlying obligations.

The Executor argues that after these claims were filed the GCB engaged in conduct inconsistent with acceleration, as it continued to accept monthly payments from the principal debtors on the loan agreements underlying the 2001 and 2002 Guaranties.

When the Deceased died on January 10, 2004, GCB acquired the right to make the Estate's liability under the Guaranties immediately due and payable. GCB exercised this option when it filed the claims at issue against the Estate. At that moment, GCB's right to payment under the terms of the Guaranties became immediately due and payable, and the Estate's liability under the Guaranties became matured. All of the Guaranties include language stating that the lender's conduct may not be interpreted as affecting or diminishing the guarantor's liability. This language must be construed strongly against the guarantor. *Suntrust Bank v. Dorrough*, 59 S.W.3d 153, 156 (Tenn. Ct. App. 2001). Additionally, all of the conduct mentioned by the Executor had the effect

of reducing the Estate's liability by allowing GCB to collect additional payments from the principal debtors. Such conduct does not prejudice the rights of GCB. *See Hardeman County Bank v. Stallings*, 917 S.W.2d 695, 699 (Tenn. Ct. App. 1995). Accordingly, GCB's post-claim relations with the borrowers did not affect the Estate's liability, and GCB's right to payment under the Guaranties.

For the foregoing reasons, we affirm the Judgment of the Trial Court, and remand, with the cost of the appeal assessed to the Estate of Miller S. Price.

_____
HERSCHEL PICKENS FRANKS, P.J.